**In re the DETENTION OF Anthony S. BETSWORTH.**

**Anthony S. Betsworth, Appellant.**

No. 04–1373.

Supreme Court of Iowa.

March 17, 2006.

Mark Smith, First Assistant State Public Defender, and Steven L. Addington, Assistant State Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall and Denise A. Timmins, Assistant Attorneys General, for appellee, State of Iowa.

TERNUS, Justice.

The appellant, Anthony Betsworth, suffers from an organic brain disorder characterized by hypersomnolence (excessive sleeping), compulsive hyperphagia (excessive food intake), and abnormally uninhibited sex drive. He appeals from his commitment as a sexually violent predator under Iowa Code chapter 229A (2003) on several grounds. Principally, he contends he is not amenable to sex offender treatment, and therefore, his commitment under chapter 229A is contrary to the terms of that statute and violates his right to due process of law. Finding no basis for reversal, we affirm the judgment of commitment.

## I. *Background Facts and Proceedings.*

Until the summer of 2000, Anthony Betsworth displayed no significant mental problems. He was married, had a daughter, and participated in normal life activities. But in July 2000, a significant change abruptly came over Betsworth. He began experiencing hypersomnia, sleeping multiple days at a time. He also exhibited hyperphagia, eating excessively. And finally, he began showing a much heightened degree of sexual expression and sexual interest. After he began exposing himself in public, Betsworth was civilly committed in August 2000 as "seriously mentally impaired" under Iowa Code chapter 229, Iowa's civil commitment statute for the mentally ill.

During his confinement in a secure facility, Betsworth became increasingly sexually aggressive, grabbing female staff, rubbing his groin against them, and grabbing at their breasts and crotch. Betsworth frequently masturbated in front of others and verbally assaulted them, asking questions of a sexual nature and asking for sexual favors. When told to stop these inappropriate behaviors, he showed little response, often laughing. In October 2001, Betsworth was convicted of simple assault as a result of his conduct on the locked ward.

Betsworth was placed in a transitional unlocked facility in 2002. In January of that year, a staff member found him having sexual intercourse with a female patient who lacked the ability to consent. This incident led to Betsworth's conviction for assault with intent to commit sexual abuse. Although he spent some time in jail, he was eventually placed on probation.

Shortly after his release from jail, Betsworth grabbed an employee in the Woodbury County clerk of court office, pressing his genitalia into her buttocks. He then grabbed her buttocks and shoulders, pressing her into the counter so she could not move. Betsworth was charged and convicted of simple assault for this incident. His prior probation was revoked, and he was sent to prison.

The State subsequently filed a petition to have Betsworth committed as a sexually violent predator, which culminated in a jury trial on August 11, 2004. After the jury found him to be a sexually violent predator, the respondent was committed by the court to the custody of the department of human services (DHS) "for control, care, and treatment until such time as his mental abnormality has so changed that he is safe to be placed in a transitional release program or discharged."

## II. Issues on Appeal.

Betsworth raises several issues on appeal: (1) chapter 229A does not apply to a person who suffers from a physiological mental defect and who is not amenable to sex offender treatment; (2) chapter 229 provides the exclusive procedure for the involuntary commitment of mentally ill persons; (3) there was insufficient evidence to support the jury's verdict that he was a sexually violent predator because his offenses were not "predatory"; and (4) his commitment under chapter 229A violates his statutory and due process rights to meaningful treatment. We will first address Betsworth's arguments concerning the applicability of chapter 229A to a person in his condition, then his challenge to the sufficiency of the evidence, and finally his right-to-treatment claims.

## III. Applicability of Chapters 229A and 229.

■■■ A. *Standard of review.* We review Betsworth's claims regarding the interpretation of chapter 229A and chapter 229 for the correction of errors of law. *See In re Detention of Cubbage,* 671 N.W.2d 442, 444 (Iowa 2003). In interpreting these statutes, our primary goal is to give effect to the intent of the legislature. *See State v. Iowa Dist. Ct. for Black Hawk County,* 616 N.W.2d 575, 578 (Iowa 2000). That intent is gleaned from the language of " 'the statute as a whole, not from a particular part only.' " *State v. Iowa Dist. Ct. for Monroe County,* 630 N.W.2d 778, 781 (Iowa 2001) (citation omitted); *accord In re Detention of Swanson,* 668 N.W.2d 570, 574 (Iowa 2003). Because we presume the legislature intends " '[a] just and reasonable result,' " we interpret statutes to avoid impractical or absurd results. *Iowa Dist. Ct. for Black Hawk County,* 616 N.W.2d at 578 (citation omit-

ted); *accord In re Detention of Swanson,* 668 N.W.2d at 574.

B. *Evidentiary record.* Before we discuss the applicability of the civil commitment procedures set forth in chapters 229A and 229, we review the testimony at trial concerning the nature of Betsworth's mental condition and the prospects for treatment.

The State presented the testimony of Dr. Dennis Doren, a licensed psychologist with extensive experience working with sex offenders. Based on a short interview with the respondent and a review of the respondent's records, Dr. Doren concluded Betsworth suffered from an organically based problem, in other words, a physiological abnormality of the brain. Although Dr. Doren found it difficult to place a label on Betsworth's condition, the doctor was certain it was real. The witness opined Betsworth's condition was acquired or congenital or both.

Dr. Doren believed Betsworth's symptoms revealed very, very significant volitional and emotional capacity problems. He explained the term "volitional capacity" has to do with the process of making decisions about one's behavior. "Emotional capacity" refers to the ability to demonstrate a concern for others. Due to these problems, Betsworth would have serious difficulty controlling his behavior, according to this witness. Dr. Doren also believed Betsworth's condition predisposed him to commit sexually violent offenses.

Finally, the doctor discussed his risk assessment of Betsworth. Dr. Doren employed three actuarial assessments in which Betsworth scored in the high-risk category on two and in the moderate-risk category on the third. The witness noted Betsworth had not participated in a sex offender treatment program, and the treatment the respondent had been receiving under his chapter 229 commitment had

not been successful in lowering the risk of another offense. The final circumstance considered by the doctor was the fact that despite Betsworth's institutionalization, the respondent continued to offend within a controlled environment. Based upon all these factors, Dr. Doren opined that Betsworth was at a high risk to reoffend.

A staff member who had been assaulted twice by the respondent also testified. She said that on both occasions, Betsworth laughed and showed no remorse for his actions. A correctional counselor from the Newton Correctional Facility, where Betsworth was confined at the time of trial, gave similar testimony. This witness testified the respondent could be disciplined every day for sexually inappropriate comments or for exposing himself, "but it's gotten to the point where nobody takes any disciplinary action on him because it doesn't mean anything." Instead, Betsworth has been placed in lock-up, and his contact with female staff members has been limited due to his inability to control himself.

Betsworth called Dr. Jason Smith, the administrator for the civil commitment unit for sexual offenders in Cherokee, to testify. Dr. Smith described the various treatment modalities available at the facility, including cognitive therapy, relapse prevention, individual therapy, and medication management. The witness acknowledged that, from the record, it appeared the respondent would probably not benefit greatly from traditional cognitive therapy. Therefore, he concluded, "[w]e would probably use more of the behavioral components" in treating Betsworth. Dr. Smith acknowledged it seemed the respondent would have difficulty in group therapy, but stated he could not say for sure until he actually saw how the respondent would manifest his symptoms in that setting. Finally, Dr. Smith stated that all treatment, including medication management, would be individualized for the respondent.

■■ C. *Applicability of chapter 229A.* Betsworth claims chapter 229A does not apply to a person who suffers from a physiological mental defect and is not amenable to sex offender treatment. We begin with a brief review of the pertinent provisions of chapter 229A.

Iowa Code chapter 229A sets up "a civil commitment procedure for the long-term care and treatment of the sexually violent predator." Iowa Code § 229A.1, para. 2. The statute defines a "sexually violent predator" as

a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

*Id.* § 229A.2(11). A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." *Id.* § 229A.2(5). This definition places no limitation on the nature of the condition that may qualify as a "mental abnormality." *See In re Detention of Barnes*, 689 N.W.2d 455, 458–59 (Iowa 2004) (holding "the types of conditions that can serve to establish a 'mental abnormality' are not limited to certain recognized diagnoses"). Thus, the term "mental abnormality" appears to include an organic condition such as that from which Betsworth suffers, provided the condition meets the other requirements of the statutory definition of "mental abnormality." *See id.* ("What is important is that the statute requires the condition to be congenital or acquired and

to affect the emotional or volitional capacity of the person subject to commitment.").

Betsworth claims, however, that the definition of "mental abnormality" cannot be read so broadly. He relies on section 229A.1, which states in part:

> The general assembly finds that a small but extremely dangerous group of sexually violent predators exists which is made up of persons who do not have a *mental disease or defect* that renders them appropriate for involuntary treatment pursuant to the treatment provisions for mentally ill persons under chapter 229, since that chapter is intended to provide short-term treatment to persons with serious mental disorders and then return them to the community. In contrast to persons appropriate for civil commitment under chapter 229, sexually violent predators generally have *antisocial personality features* that are unamenable to existing mental illness treatment modalities and that render them likely to engage in sexually violent behavior.

Iowa Code § 229A.1, para. 1 (emphasis added). Based on these legislative findings, the respondent contends that persons who "have a mental disease or defect" that causes their behavior are appropriate for commitment under chapter 229, whereas offenders who have "antisocial personality features" and a "mental abnormality" that influence their behavior are appropriately committed under chapter 229A. The rationale for this distinction, according to Betsworth, is that persons who have a mental disease or defect cannot appreciate the wrongfulness of their conduct, and consequently, cannot meaningfully participate in, or benefit from, cognitive behavioral therapy. In contrast, sexually violent predators, he claims, "are fully aware that what they have done is wrong, and can fully and meaningfully participate in and benefit from cognitive behavioral treatment."

We are not persuaded the distinction suggested by the respondent was intended by the legislature. In adopting chapter 229A, the legislature was not concerned with "persons who do not have a mental disease or defect," but with "persons who do not have a mental disease or defect *that renders them appropriate for involuntary treatment pursuant to [chapter 229]*." *Id.* § 229A.1, para. 1 (emphasis added). In other words, the sexually violent predator was viewed as a person who has a mental disease or defect but who could benefit from a more specialized treatment program than usually found in institutions treating the general population of mentally ill persons. Moreover, the legislature did not find that *all* sexually violent predators have a mental disorder with antisocial personality features; it said, "sexually violent predators *generally* have antisocial personality features." *Id.* (emphasis added). Thus, the definition of "mental abnormality," which does not exclude organic conditions and which does not require the condition to include antisocial personality features, is fully consistent with the legislative findings. Consequently, the district court did not err in relying on the plain meaning of the statutory definitions in concluding chapter 229A encompasses a condition such as that exhibited by the respondent.

We also disagree with the respondent's thought that chapter 229A requires that the person committed be amenable to the long-term cognitive behavioral treatment principally used to treat sex offenders. It is true the legislative findings refer to the "treatment modalities" for the sexually violent predator being "very different from the traditional treatment modalities available ... for persons appropriate for commitment under chapter 229." *See id.*

§ 229A.1, para. 2. The legislature also stated that "[t]he procedures ... should ... provid[e] treatment services designed to benefit sexually violent predators who are civilly committed [and][t]he procedures should ... encourage full, meaningful participation of sexually violent predators in treatment programs." *Id.* But the legislature did not limit the types of treatment modalities or programs that should or could be provided to persons committed under chapter 229A. *See id.* § 229A.7(4) (stating "the respondent shall be committed to the custody of the director ... for control, care, and treatment"). Thus, the State is free to provide individualized treatment for sexually violent predators. Such treatment may or may not include cognitive behavioral therapy and may or may not include treatment that would also be available under chapter 229. We conclude, therefore, that chapter 229A encompasses sexually violent predators who, like Betsworth, will not benefit greatly from cognitive behavioral therapy and must instead be treated with other modalities.

■ D. *Exclusivity of chapter 229.* Betsworth also argues the civil commitment statute for the mentally ill, chapter 229, provides the exclusive procedure for the involuntary commitment of mentally ill persons. He relies on section 229.26, which states in pertinent part: "Sections 229.6 through 229.19 constitute the exclusive procedure for involuntary hospitalization of persons *by reason of serious mental impairment* in this state," with certain exceptions not implicated here. *Id.* § 229.26 (emphasis added). Betsworth points out that although the legislature excluded certain proceedings from the procedural requirements of chapter 229, chapter 229A commitment proceedings were not among the exceptions.

Persons who are "seriously mentally impaired," as defined in section 229.1(15),

may be involuntarily hospitalized under chapter 229. *Id.* § 229.13(1). Sections 229.6 through 229.19 set forth the *procedural* steps that must be followed for an involuntary commitment under chapter 229. Thus, the statement in section 229.26 upon which the respondent relies simply means that these procedures must be followed, with certain exceptions, in order to involuntarily hospitalize a person based on the person's "serious mental impairment." But Betsworth is not being committed because he has a "serious mental impairment"; his commitment rests on a "mental abnormality" that predisposes him to commit sexually violent offenses, as defined in chapter 229A. Chapter 229A has its own procedures for commitment. Thus, the "exclusive" procedures of chapter 229 are simply not applicable to a commitment pursued under chapter 229A.

IV. *Sufficiency of the Evidence.*

A. *Claim.* Betsworth contends there was insufficient evidence to support the jury's verdict that he was a sexually violent predator because his offenses were not "predatory," as that term is defined in chapter 229A. This contention requires that we interpret the statutory definition, and then determine whether there was sufficient evidence to support the jury's finding that the respondent was a sexually violent predator.

■ B. *Standards of review.* We have already set forth the principles that guide our interpretation of statutes. Our review of a challenge to the sufficiency of the evidence is for the correction of errors of law. *See In re Detention of Swanson,* 668 N.W.2d at 574. If there is substantial evidence upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt, we are bound by the jury's finding. *Id.*

"To determine whether the evidence was substantial, we consider the entirety of the evidence presented in a 'light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record.' Evidence is not substantial if it raises only suspicion, speculation, or conjecture."

*Id.* (citations omitted).

C. *Interpretation of statute.* As noted above, a "sexually violent predator" is defined in relevant part as a person "who suffers from a mental abnormality which makes the person likely to engage in *predatory* acts constituting sexually violent offenses." *See* Iowa Code § 229A.1(11) (emphasis added). The term "predatory" is defined as "acts directed toward a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.* § 229A.2(6). Betsworth claims the evidence does not establish that he is likely to commit "predatory acts" because (1) he does not form relationships with victims, and (2) he does not have the capacity to form the required "purpose of victimization" due to his mental condition.

1. *Relationship requirement.* Chapter 229A does not define the term "relationship." The dictionary defines this word as "a state of affairs existing between those having relations or dealings." *Webster's Third New International Dictionary* 1916 (unabr. ed. rev.2002). This definition has no temporal requirement with respect to the length of the relations or dealings between the offender and his victim or with respect to the quality or quantity of interaction necessary to create a "relationship." Therefore, we think the legislature, in using the term "relationship," was simply referring to an offender's engagement or dealing with the other person.

As noted above, we must interpret this statute in a manner consistent with legislative intent and with the goal of avoiding an absurd result. A primary purpose of this statute is the protection of the public. *See* Iowa Code § 229A.1. If this court were to adopt a narrow interpretation of the term "relationship," as suggested by the respondent, sexual offenders whose victims were strangers would not fall within the reach of chapter 229A. This result would be illogical and absurd. We refuse to adopt an interpretation of the statute that would produce this outcome.

2. *Purpose of victimization.* We also reject the notion that some level of mental capacity for the formation of an intent to victimize is required by the "purpose of victimization" language of section 229A.2(6). A "purpose" is simply "an object, effect, or result aimed at, intended, or attained." *Webster's Third New International Dictionary* 1847. To interpret the act as requiring intent would unjustifiably narrow the scope of the statute, eliminating a group of sexual offenders—those whose mental abnormality precludes the formation of an intent to do a particular act for a specific purpose—who are just as dangerous to the public and just as much in need of treatment as those offenders capable of forming an intent. Thus, we interpret the statute to mean that an act is predatory if the respondent's engagement or dealing with another person is primarily *aimed at* victimizing the person in a sexual manner.

D. *Sufficiency of the evidence.* Dr. Doren, the State's expert, testified to his opinion that three of the four prior offenses by the respondent were predatory in nature. The non-predatory offense was not described in any detail in the record, but apparently involved Betsworth's wife. In the other three cases involving the staff member, the fellow patient, and the clerk-

of-court employee, the respondent had had very little interaction with or was a stranger to the victims when he preyed upon them. Dr. Doren opined that the offenses involving these victims were predatory.

The respondent took the stand and denied he had committed the offenses of which he had been convicted. He did, however, admit to thinking about sex all the time and to fantasizing about having sex with any woman he could. A staff member who testified said Betsworth referred to female staff members as "his bitches."

Betsworth relies heavily upon a statement by Dr. Doren that the respondent's "behaviors since July 2000 seem almost of an involuntary nature." When this comment is considered in the context of the entire answer of which it is a part, it is apparent the doctor's statement that Betsworth's conduct seemed almost involuntary was the doctor's shorthand way of expressing the very significant problem Betsworth has with his volitional capacity. Therefore, we do not think this ambiguous comment stands for the proposition that Betsworth's actions lacked a purpose or goal.

After having reviewed the record, we conclude the evidence was sufficient to support the jury's finding that Betsworth's dealings with his victims were primarily aimed at using them for his own sexual purposes. Therefore, the evidence was also adequate to support the finding that the respondent was likely to engage in acts of a predatory nature beyond a reasonable doubt. The fact that the respondent may be moved to engage in such acts as a result of his brain disorder does not diminish the predatory nature of his conduct.

## V. Right–to–Treatment Claims.

A. *Claims.* Betsworth asserts he has a statutory and constitutional due process right to effective treatment, or treatment that will cure or improve his mental condition such that commitment will no longer be needed. He alleges there is no effective treatment for his physiologically-based mental abnormality, and therefore, his commitment under chapter 229A violates his right to effective treatment.

 B. *Principles of review.* We have previously stated the standards governing our review of statutory interpretation issues. Our review of the respondent's constitutional claim is de novo in light of the totality of the circumstances. *See In re Detention of Williams,* 628 N.W.2d 447, 451 (Iowa 2001). Statutes are presumed to be constitutional, so a party claiming to the contrary has the burden to rebut this presumption. *See In re Detention of Garren,* 620 N.W.2d 275, 278 (Iowa 2000).

 C. *Statutory right to treatment.* Section 229A.1 states, "The procedures regarding sexually violent predators should reflect legitimate public safety concerns, while providing treatment services designed to benefit sexually violent predators who are civilly committed." Iowa Code § 229A.1, para. 2. The goal of treatment is echoed in section 229A.7(4), which provides that a person found to be a sexually violent predator must be committed for "control, care, *and treatment* until such time as the person's mental abnormality has so changed that the person is safe to be placed in a transitional release program or discharged." *Id.* § 229A.7(4) (emphasis added). The respondent claims these provisions afford him a right to specialized treatment appropriate to the condition that necessitates commitment. *See Kansas v. Hendricks,* 521 U.S. 346, 367, 117 S.Ct. 2072, 2084–85, 138 L.Ed.2d 501, 518 (1997) (interpreting language in Kansas act identical to that found in section 229A.7(4) as imposing "an obligation to provide treat-

ment" to committed persons). He claims his commitment violates this statutory right to treatment because he will not be amenable to the treatment regimens offered in the sex offender program.

Betsworth's claim is, at best, premature. The director of the sex offender program testified at trial that an individualized treatment program would be offered to Betsworth in an attempt to improve his ability to control his deviant behaviors. There is nothing in the record to show that treatment appropriate to the respondent's particular condition will not be undertaken by DHS. Therefore, Betsworth has failed to demonstrate a violation of his right to treatment.

### D. Substantive due process right to treatment.

"[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435, 451 (1972). Betsworth asserts his confinement bears no reasonable relationship to the purpose for his commitment—treatment—because his condition is not treatable. Therefore, he claims, his right to substantive due process is violated. Even if we accept Betsworth's argument that his condition is untreatable, that circumstance would not violate his due process rights.

In *Hendricks*, the United States Supreme Court pointed out that it had never held that a State could not "civilly detain[ ] those for whom no treatment is available, but who nevertheless pose a danger to others." *Hendricks*, 521 U.S. at 366, 117 S.Ct. at 2084, 138 L.Ed.2d at 517. The court observed, that

> to require treatment as a precondition for civil confinement of the dangerously insane when no acceptable treatment ex-

isted . . . would obligate a State to release certain confined individuals who were both mentally ill and dangerous simply because they could not be successfully treated for their afflictions.

*Id.* at 366, 117 S.Ct. at 2084, 138 L.Ed.2d at 518. In a later case, the Court more directly stated dangerous persons with untreatable conditions could be constitutionally confined. *See Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). In *Seling*, the Court interpreted its discussion in *Hendricks* as an explanation "that there [is] no federal constitutional bar to [the] civil confinement [of sexually violent predators with untreatable conditions], because the State [has] an interest in protecting the public from dangerous individuals with treatable as well as untreatable conditions." *Id.* at 262, 121 S.Ct. at 734, 148 L.Ed.2d at 746. We hold, therefore, that Betsworth's confinement on the basis of his dangerousness as a sexually violent predator does not violate his due process rights, notwithstanding the dismal prognosis for improvement in his mental condition. *See In re Blodgett*, 510 N.W.2d 910, 916 (Minn.1994) (holding sexual predator's confinement did not violate due process even though treatment was "problematic").

### VI. Summary and Disposition.

The confinement of the respondent as a sexually violent predator is appropriate under chapter 229A. An organic brain disorder such as that from which the respondent suffers can constitute a "mental abnormality" under the statute even though such a condition is unlikely to be treatable by the cognitive behavioral therapy generally used for sexually violent predators. In addition, the record evidence was sufficient to support the jury's finding that the respondent was likely to engage in predatory acts in the future.

The respondent's claim that his right to treatment under chapter 229A is violated due to the difficulty in treating his condition has no merit in view of the evidence that an individualized treatment plan will be designed for his particular needs. Moreover, even if the respondent's condition is untreatable, the State may constitutionally confine the respondent as a sexually violent predator.

AFFIRMED.