**IN THE COURT OF APPEALS OF IOWA**

No. 15-0415
Filed July 27, 2016

IN RE DETENTION OF

**CHRISTIAN DANE SCHIEBEL,**
          Respondent-Appellant.

_____


          Appeal from the Iowa District Court for Marshall County, James C.

Ellefson, Judge.


          A respondent appeals the jury's verdict finding him to be a sexually violent

predator pursuant to Iowa Code chapter 229A (2013).  **AFFIRMED.**


          Adam Gregg, State Public Defender, and Michael H. Adams, Special

Defense Unit, for appellant.

          Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee State.


          Considered by Potterfield, P.J., McDonald, J., and Scott, S.J.*

          *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, Senior Judge.**

Christian Schiebel appeals the jury's finding that he should be civilly committed as a sexually violent predator, pursuant to Iowa Code chapter 229A (2013). At the time the State filed the commitment petition under chapter 229A, Schiebel was in the custody of the Iowa Department of Human Services based on two juvenile adjudications for acts considered sexually violent offenses.[1] On appeal, Schiebel asserts due process does not allow a person to be civilly committed based solely on offenses committed as a juvenile. He also claims the evidence presented against him is insufficient to prove he is a sexually violent predator. We affirm.

**I. Background Facts and Proceedings.**

Schiebel was adopted at the age of three after he was removed with his older brother from his biological mother's care. Schiebel remembers being sexually abused by a fifteen-year-old neighbor boy when he was seven or eight years old. A few years later, when he was around ten years old, Schiebel sexually abused his four-year-old brother on two separate occasions. As a result of Schiebel's actions and due to the anger he was exhibiting particularly towards his father, Schiebel went to live at his grandparents' home when he was eleven years old. While living with his grandparents, Schiebel sexually abused two of his cousins, who were approximately ages eight and six. Schiebel estimated he offended against one of his cousins at least twenty times over the course of

---

[1] Schiebel was adjudicated delinquent on a charge of assault with intent to commit sexual abuse in April 2008. In June 2009, he was adjudicated delinquent for the offense of sexual abuse in the third degree. See Iowa Code section 229A.2(11) for a definition of what offenses qualify as a "sexually violent offense."

seven or eight months. Also while living with his grandparents, Schiebel exposed himself to ten or eleven strangers in the public restroom of a grocery store. Schiebel testified he did so in the hope that he would be kidnapped by one of the men in the restroom because then he would feel accepted by someone.

Schiebel's parents then placed him in the Boys and Girls Home in Sioux City for treatment and supervision. He continued to act out in sexual ways, including indecent exposure and sexual contact, he had difficulty controlling his anger, and he ran away from the facility. He was removed from the home, and a juvenile case was then filed against Schiebel for his abuse of his four-year-old brother. Schiebel was adjudicated delinquent based on his admission to assault with intent to commit sexual abuse in 2008.

He was placed at the Woodward Academy where they attempted to offer treatment for sexual offending, but Schiebel continued to act out with his peers and propositioned staff. Due to his continued sexual behaviors and an assault on a staff member, Schiebel was removed from Woodward after a year and placed at Four Oaks in the STOP program. His sexual acting out and aggression continued at Four Oaks despite the treatment offered. Due to his aggression and self-harming behavior, he was then placed at St. Luke's Hospital when he was fourteen, where he committed another sexual offense against a fellow patient. As a result of that incident, Schiebel admitted to committing third-degree sexual abuse in another juvenile case in 2009 and was again adjudicated delinquent.

After the second adjudication, he was transferred to the juvenile detention facility in Eldora and then transferred to a treatment center in Utah. When in Utah, he had a sexual relationship with a peer and ran away from the facility.

While he was away from the facility, he exposed himself to people who drove by on the road. He was then placed at another facility in Utah that treated juvenile sex offenders where he continued to act out in sexual ways with consensual and nonconsensual partners.

When he was sixteen, Schiebel was brought back to Iowa to the detention center in Eldora. There Schiebel underwent sex offender treatment, but he continued to offend sexually, including exposing himself to consenting and nonconsenting individuals, and he had difficulty controlling his temper, resulting in him being placed in lockdown. In the three years Schiebel underwent sex-offender treatment at Eldora, his therapist stated Schiebel learned a lot about his sexual offending but still struggled with controlling himself.

In July 2014, before he could be discharged from Eldora due to his age, the State filed a petition to have Schiebel civilly committed as a sexually violent offender. He was then transferred to the Newton Correctional Facility for the pendency of this proceeding. While at Newton, Schiebel continued to act out in a sexual way, including openly masturbating hoping someone would walk by and see him.

At trial on the civil commitment petition, the State, in addition to submitting Schiebel's testimony, offered the opinions of its expert, Amy Phenix, Ph.D., a clinical psychologist practicing in forensic psychology and treating sex offenders since 1993. After reviewing the records involved in the case and interviewing Schiebel, Dr. Phenix opined Schiebel had a mental abnormality. Specifically, Dr. Phenix diagnosed Schiebel with pedophilic disorder, other specified paraphilic disorder with arousal to nonconsenting sexual activity, antisocial personality

disorder, borderline personality disorder, and major depression. She agreed these five conditions affect Schiebel's emotional and volitional control to a degree that he has difficulty controlling his sexual offending. Based on her evaluation, Dr. Phenix believed Schiebel was more likely than not to commit another sexually violent offense in the future.

On cross-examination, Dr. Phenix admitted she had not treated any sex offender who had committed sexual offenses only when the offender was a juvenile. She also admitted Schiebel has not committed a sexual offense against a child since he was a child, the last offense having occurred five or six years ago. But she maintained her diagnosis of pedophilic disorder based on Schiebel's report to her that he, as recently as age sixteen, was having sexual fantasies involving sex with children.

In response, Schiebel offered the testimony of Richard Wollert, Ph.D., a clinical and forensic psychologist, who also treats sex offenders, including thirty to fifty juvenile sex offenders over the years. Dr. Wollert disagreed with Dr. Phenix's diagnosis and would not have diagnosed Schiebel with any current mental abnormality, though there was a time that Dr. Wollert agreed Schiebel had reactive attachment disorder. It was Dr. Wollert's opinion upon his evaluation that Schiebel did not exhibit symptoms that were significant for any mental health diagnosis. He did not believe Schiebel had pedophilic disorder because, by the age of sixteen, Schiebel was attracted to peers his own age. Dr. Wollert also asserted the otherwise specified paraphilic disorder with nonconsenting arousal was not a proper DSM-V diagnosis because it is a crime, not a mental disorder. He explained such a diagnosis had been proposed

several times throughout the DSM revisions, but it was rejected each time. Likewise, Dr. Wollert did not believe antisocial personality disorder or borderline personality disorder were proper diagnosis because Schiebel was too young to receive such a diagnosis and he has been restricted to a correctional setting since he was twelve years old. Finally, Dr. Wollert did not think Schiebel was currently exhibiting symptoms of depression and, in any event, such a diagnosis would not be relevant to a sexually violent predator determination. It was Dr. Wollert's opinion that natural development and maturation weighed heavily to explain Schiebel's history of offending.

With regard to the likelihood of reoffending, Dr. Wollert asserted the testing instrument used by Dr. Phenix was not appropriate to use for individuals who only offend as juveniles because the instrument was developed for adult sex offenders. He asserted there was only one study that looked at juvenile-only sex offenders and that study found a recidivism rate of five to seven percent, far below the "more likely than not" legal standard. It was Dr. Wollert's opinion that Schiebel was not more likely than not to reoffend.

The matter was submitted to the jury, who determined Schiebel was a sexually violent predator. The court then entered judgment committing Schiebel to the custody of the director of the department of human services for control, care, and treatment until such time as his mental abnormality has so changed that he is safe to be placed in a transitional release program or discharged. Schiebel was ordered to be transferred to the civil commitment unit for sexual offenders. He now appeals.

**II. Scope and Standard of Review.**

Schiebel's claim that his due process rights were violated is a constitutional claim that is reviewed de novo.  *See In re Det. of Betsworth*, 711 N.W.2d 280, 288 (Iowa 2006).  We review his challenge to the sufficiency of the evidence for correction of errors at law.  *Id.* at 286.

**III. Due Process.**

Citing the recent Eighth Amendment case law that explains how juvenile offenders are different from adults,[2] Schiebel claims it violates due process to subject him to civil commitment as a sexually violent predator based on sexual offenses committed when he was a juvenile.  He asserts that despite the fact that this matter is a civil commitment instead of a criminal sentence, the same logic applies—professionals cannot predict a juvenile's offender's amenability for reform based on acts committed when the brain is not fully developed.  In order to civilly commit him, Schiebel contends there must be a recent overt act committed as an adult that shows sexual dangerousness in order to satisfy the Due Process Clauses of the United States and Iowa Constitutions.

We decline to transpose the rationale the United States and Iowa Supreme Courts used to determine certain criminal sentences imposed on juvenile offenders violate the Cruel and Unusual Punishment Clause into the realm of civil commitments for sexually violent predators.  A civil commitment is not a criminal sentence meant to punish an offender but is a mechanism where by treatment may be provided to certain offenders in an environment that

---

[2] For an overview of the recent Eighth Amendment case law pertaining to sentencing of juvenile offenders, see *Miller v. Alabama*, 132 S. Ct. 2455 (2012), and *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014).

protects society from further offenses. *See In re Det. of Garren*, 620 N.W.2d 275, 280–83 (Iowa 2000) (analyzing Iowa Code chapter 229A and concluding the statutes are civil in nature, not criminal). Once a person no longer suffers from a mental abnormality that makes the person likely to engage in predatory acts, the person is discharged or is placed in a suitable transitional release program. Iowa Code § 229A.8. Regular examinations are conducted, and procedures are in place to permit those civilly committed to seek review of their status. *Id.* The ability of juvenile offenders to rehabilitate and change, which constitutionally necessitated special criminal sentencing considerations, is already considered and applied within the framework of the civil commitment statutes. *See generally id.* ch. 229A.

With respect to Schiebel's claim regarding the need for a recent overt act, the Iowa Supreme Court in 2013 held, under the language of the then applicable code section, juvenile adjudications could not be used as a conviction for the purposes of determining whether the person is a sexually violent predator. *In re Det. of Geltz*, 840 N.W.2d 273, 280 (Iowa 2013). In response to this holding, the legislature amended the language of the statutes at issue to provide juvenile adjudications do qualify as convictions for the purposes of determining whether a person is a sexually violent offender. *See* 2014 Iowa Acts ch. 1059, § 1 (adding a definition of "convicted" into section 229A.2 that included juvenile adjudications and amending section 232.55 to provide juvenile adjudications can be used in civil commitment proceedings under chapter 229A). Thus, it was proper for the State to use Schiebel's juvenile adjudications as the basis for the civil commitment petition.

In addition, our supreme court has determined that if a person is presently confined for a sexually violent offense, like Schiebel was, "the 'recent overt act' requirement in chapter 229A is satisfied" and due process is not offended. *In re Det. of Gonzales*, 658 N.W.2d 102, 105 (Iowa 2003); *see also In re Det. of Willis*, 691 N.W.2d 726, 729–30 (Iowa 2005) ("In not expressly requiring a recent overt act for petitions for commitment filed under section 229A.4(1), the legislature could reasonably conclude that the filing of a civil commitment petition must necessarily be delayed during the period of confinement under a criminal judgment and therefore allow a petition to be filed at the conclusion of that confinement notwithstanding the absence of an additional overt act.").

We therefore do not conclude Schiebel's due process rights were violated under the United States or Iowa Constitutions by the use of his juvenile adjudications as a basis for his civil commitment as a sexually violent predator.

**IV. Sufficiency of the Evidence.**

Next, Schiebel challenges the sufficiency of the evidence presented at trial to find him to be a sexually violent predator. He challenges both the proof of his mental abnormality and the conclusion regarding his likelihood to sexually reoffend.

"If there is substantial evidence upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt, we are bound by the jury's finding." *Betsworth*, 711 N.W.2d at 286. We consider all the evidence in the light most favorable to the State including all legitimate inferences and presumptions. *Id.* at 287. But "[e]vidence is not substantial if it raises only suspicion, speculation, or conjecture." *Id.* (citation omitted).

As set out above, both the State and Schiebel offered expert testimony regarding both Schiebel's mental abnormality and his likelihood to reoffend. "[I]t was for the jury to decide which of the experts was more credible . . . ." *In re Det. of Altman*, 723 N.W.2d 181, 185 (Iowa 2006) (citation omitted). The jury chose to accept Dr. Phenix's opinions over those of Dr. Wollert, and we will not interfere with that decision.

## V. Conclusion.

We affirm the jury's conclusion that Schiebel is a sexually violent predator and reject Schiebel's claim on appeal that basing his civil commitment on acts he committed when he was a juvenile violates due process.

**AFFIRMED.**