# IN THE COURT OF APPEALS OF IOWA

No. 18-0715
Filed May 1, 2019

**IN RE THE DETENTION OF ROBERT SWANSON,**

**ROBERT E. SWANSON,**
          Respondent-Appellant.

_____

          Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

          Robert Swanson appeals the order continuing his commitment as a sexually violent predator. **AFFIRMED.**

          Michael H. Adams of State Public Defender's Office, Des Moines, for appellant.

          Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

          Heard by Potterfield, P.J., and Doyle and Mullins, JJ.

**PER CURIAM.**

Robert Swanson appeals the order continuing his commitment as a sexually violent predator under Iowa Code chapter 229A (2017) following an annual review. He challenges the sufficiency of the evidence concerning the existence of a mental abnormality and the likelihood that he will commit a sexually violent offense if discharged from treatment. Because the State has met its burden of proving beyond a reasonable doubt that Swanson's mental abnormality remains such that he is likely to engage in predatory acts that constitute sexually violent offenses if discharged, we affirm.

**I. Background Facts and Proceedings.**

The State initiated sexually violent predator proceedings against Swanson after his release from prison in November 2001. While living in a halfway house, Swanson made phone calls and sent a letter to a woman whom he had only brief contact with while asking about a job. The content of those communications was disturbing enough that the woman reported them to the police, who initiated an investigation.

> The investigation revealed Swanson had a long history of committing sexually violent offenses. He was charged with his first sexual offense in 1964, at the age of fourteen. In 1973, he was convicted for raping a fourteen-year-old girl. He was released from prison in 1979 and returned there in 1980 after another conviction, this time for sexual abuse in the third degree. He also allegedly assaulted another woman in 1980 who did not report the crime before the statute of limitations on the offense had run. In a letter to the governor in 1984, Swanson pleaded for additional state treatment programs for sex offenders such as him, claiming that he had raped five or six additional women between 1964 and 1973. In the same letter, he claimed he had raped at least one more woman between 1979 and 1980. Finally, while imprisoned for the second time, Swanson called or wrote several women in the Marshalltown

area, apparently by randomly finding phone numbers and addresses that were listed with only a single, female name.

> Based on his prior criminal record and his own admissions, Swanson had committed about ten sexually violent offenses in his lifetime. However, it was the pattern of his prior conduct that became most alarming as the investigation proceeded. On a number of times in the past, Swanson had randomly contacted single women with whom he had had little or no prior connection in an effort to befriend them. Tragically, some of these women later became victims of his violent sexual assaults.

*In re Det. Swanson*, 668 N.W.2d 570, 573 (Iowa 2003) (footnotes omitted).

The State filed a petition seeking to have Swanson determined to be a sexually violent predator. After a jury determined that Swanson is a sexually violent predator, the district court entered an order civilly committing him. Swanson appealed, and our supreme court affirmed Swanson's commitment as a sexually violent predator. *Id.* at 577.

Swanson participated in a Civil Commitment Unit for Sexual Offenders (CCUSO) treatment program from 2002 to 2009. During that time, he progressed to Phase 3 of treatment. However, after sending a threatening letter to the Federal District Court, Swanson served a seven-and-one-half-year sentence in federal prison. Although he returned to the CCUSO treatment program after he completed his sentence, he had not progressed beyond Phase 1 in approximately twenty-four months, even though offenders typically move past Phase 1 in a few weeks. Although Swanson could proceed to Phase 2 by submitting a written request, he refused to do so.

The State filed a notice of annual report in November 2017, and Swanson requested a hearing. At the final hearing, the court heard testimony from Swanson, as well as from Dr. Stacey Hoem, the State's expert witness, and Dr. Richard

Wollert, Swanson's expert witness. The district court entered an order continuing his commitment under chapter 229A. Swanson appeals.

## II. Scope of Review.

We review challenges to the sufficiency of the evidence for the correction of errors at law. *See In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). We will affirm if, when the evidence is viewed in the light most favorable to the State, a rational factfinder could find the respondent to be a sexually violent predator beyond a reasonable doubt. *See id.* However, evidence that raises only suspicion, speculation, or conjecture is insufficient. *See id.*

## III. Sufficiency of the Evidence.

Once civilly committed under chapter 229A, an annual examination must be made of the committed person's mental abnormality. *See* Iowa Code § 229A.8(2). Once the report of the examination is presented to the district court, it must conduct an annual review. *See id.* § 229A.8(3). The committed person may present evidence for the court's consideration in the annual review, including expert opinions, and petition the court for discharge or placement in a transitional release program. *See id.* § 229A.8(2), (4), (5)(e)(1).

If a person is determined to be a sexually violent predator and civilly committed under chapter 229A, there is a rebuttable presumption that the person's commitment should continue. *See id.* § 229A.8(1). However, the committed person may rebut this presumption by presenting evidence that would lead a reasonable person to believe a final hearing should be held to determine whether the mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if

discharged. *Id.* § 229A.8(1), (5)(e)(1)(a). If the presumption is rebutted, the district court must hold a final hearing, at which the State has the burden of proving beyond a reasonable doubt that "[t]he committed person's mental abnormality remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged."[1] *Id.* § 229A.8(5)(e)(2)(a), (6)(d)(1).

The district court found Swanson met his burden of rebutting the presumption of continued commitment. After the final hearing, the court determined that the State had presented proof beyond a reasonable doubt that Swanson's mental abnormality remains and that he would be likely to engage in sexually violent offenses if discharged.

**A. Mental abnormality.**

Swanson first challenges the sufficiency of the evidence showing he continues to suffer from a mental abnormality. Chapter 229A defines "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." *Id.* § 229A.2(6).

Chapter 229A "places no limitation on the nature and condition that may qualify as a 'mental abnormality.'" *Betsworth*, 711 N.W.2d at 284. The question

---

[1] A committed person may also rebut the presumption of continued commitment by proof that would lead a reasonable person to believe a final hearing should be held to determine the committed person is suitable for placement in a transitional release program pursuant to section 229A.8A. *See* Iowa Code § 229A.8(5)(e)(1)(b). The State then has the burden of proving the committed person is not suitable for such placement. *See id.* § 229A.8(6)(d)(2). Although the district court determined Swanson is not suitable for placement in a transitional release program, Swanson does not challenge this finding on appeal.

is whether the condition is congenital or acquired and "affect[s] the emotional or volitional capacity of the person subject to commitment." *In re Det. of Barnes*, 689 N.W.2d 455, 458-59 (Iowa 2004). Moreover, chapter 229A "does not require that the condition affect the emotional or volitional capacity of every person who is afflicted with the disorder or condition; the requirement is that it has that effect on the particular individual subject to commitment." *Id.* at 459.

At the time Swanson was committed, he was diagnosed with paraphilia, not otherwise specified (nonconsent), and antisocial personality disorder. Since that time, Swanson has not done any specific work to treat or reduce his mental abnormality. Dr. Hoem opined that Swanson meets the diagnostic criteria for personality disorder with antisocial aspects, as well as many other criteria for antisocial personality disorder. Our supreme court has held "that a diagnosis of an antisocial personality disorder affecting a respondent's ability to control behavior . . . can support a jury finding that someone is a sexually violent predator." *In re Det. of Stenzel*, 827 N.W.2d 690, 702 (Iowa 2013). Our supreme court has found substantial evidence to support a finding that an offender is a sexually violent predator based on expert testimony diagnosing the offender "with paraphilia, not otherwise specified, (non-consent), as well as antisocial personality disorder." *Id.* Additionally, on the question of whether Swanson's condition affects his emotional or volitional capacity, the evidence shows Swanson resists rules and supervision, exhibits poor problem-solving abilities, violates social boundaries, and engages in impulsive behavior.

Swanson notes that Dr. Wollert testified he does not suffer from any condition that qualifies as a mental abnormality. Confronted with contradictory

testimony from the expert witnesses, the district court was free to accept the testimony of the State's expert instead. *Id.* Additionally, although Dr. Wollert testified that Swanson's conditions are not mental disorders as set forth in the Diagnostic and Statistical Manual of Mental Disorders, "the types of conditions that can serve to establish a 'mental abnormality' are not limited to certain recognized diagnoses." *Barnes*, 689 N.W.2d at 458.

Viewing the evidence in the light most favorable to the State and leaving credibility determinations to the district court, substantial evidence supports a finding that Swanson has a mental abnormality affecting his emotional or volitional capacity.

**B. Likelihood of committing a sexually violent offense if discharged.**

Swanson also challenges the sufficiency of the evidence showing he is likely to engage in predatory acts that constitute sexually violent offenses if discharged. "'Likely to engage in predatory acts of sexual violence' means that the person more likely than not will engage in acts of a sexually violent nature." Iowa Code § 229A.2(5).

Swanson notes that the tools used to assess his risk in 2002 are no longer widely used. Using the Static-99R, the most commonly used actuarial static instrument, both experts assessed Swanson as having a low risk of reoffending. In evaluating his risk, Dr. Hoem scored Swanson at a "1" and Dr. Wollert scored him at a "0." However, Dr. Hoem opined that Swanson is more likely than not to reoffend based on individual dynamic factors. Dr. Wollert was critical of the use of dynamic factors to assess risk.

The district court gave greater weight to the evidence presented by Dr. Hoem. The court noted that Swanson's low score on the static test was primarily determined by his age, because sexual desire typically reduces with age. However, the court did not find Swanson credible when he testified that his sexual urges have disappeared. Swanson's own testimony demonstrates why his professed lack of desire is of little consequence:

> Q. Mr. Swanson, you said you don't currently have a desire to rape anyone; is that right? A. No, ma'am.
> Q. Did you fantasize about those things before your first offense? A. Rape?
> Q. Yeah. A. No, ma'am.
> Q. After you went to prison for that the first time, did you ever want to do it again? A. No, ma'am.
> Q. But you did; right? A. Yes, ma'am.

The district court also noted that Swanson "refuses to actively participate in sex offender programming such that the veracity of his statements could be tested by the therapy process" and "engages in argumentative verbal behavior and communication that is threatening to others, which suggests that despite his age, he retains an aggressive nature."

When viewed in the light most favorable to the State, substantial evidence supports the finding that Swanson is likely to engage in predatory acts that constitute sexually violent offenses if discharged from treatment. Accordingly, we affirm.

**AFFIRMED.**