# IN THE COURT OF APPEALS OF IOWA

No. 22-1606
Filed September 13, 2023

**IN RE DETENTION OF MARQUES ALEXANDER ROBINSON,**

**MARQUES ALEXANDER ROBINSON,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


    Respondent appeals his civil commitment as a sexually violent predator.

**AFFIRMED.**


    Trevor J. Andersen, Assistant Public Defender, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee.


    Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

Marques Robinson appeals his civil commitment as a sexually violent predator under Iowa Code chapter 229A (2022). Robinson's sole issue on appeal is a challenge to the sufficiency of the evidence produced by the State to show he "suffers from a 'mental abnormality' making him likely to engage in predatory acts constituting sexually violent offenses if not confined in a secure facility." We determine sufficient evidence supports the civil commitment and affirm.

### I.    Background Facts and Prior Proceedings

On an evening in 2014, Robinson encountered a woman in a nightclub in Des Moines. At the end of the night, Robinson agreed to drive her home and she got into his vehicle. But Robinson, accompanied by his cousin, did not drive the woman to her home. Instead, he drove to Altoona, parked his car off the interstate, and gave the woman an ultimatum—have sex with him and his cousin or walk home. Robinson and his cousin sexually assaulted the woman. Robinson testified that the woman was "scared for her life." Robinson was arrested later that evening.[1]

In 2015, Robinson pled guilty to sexual abuse in the third degree, a class C felony; assault with intent to commit sexual abuse, an aggravated misdemeanor; and false imprisonment, a serious misdemeanor. The sentences were run consecutively for an indeterminate term of incarceration of thirteen years with a lifetime chapter 903B special sentence.[2]

---

[1] The trial information with the original charges is not a part of this appellate record.
[2] Iowa Code § 903B.1 provides:
>     A person convicted of a class "C" felony or greater offense under chapter 709 or section 728.12, or a class "B" felony under

After his conviction, Robinson began sex offender treatment twice while in prison, once in 2019 and again in 2021. He failed both attempts. During his first treatment attempt in 2019, Robinson was removed for disruptive behavior. On his second attempt in 2021, he was removed from treatment for indecent exposure. Since beginning his prison term, Robinson incurred fifty-six disciplinary actions, many of which involved sexual misconduct. Robinson has repeatedly exposed himself to female department of corrections staff and has been written up twelve or thirteen times for indecent exposure. The most recent incident occurred only three weeks before the civil commitment proceedings. Robinson attributes his behavior to "an unhealthy coping mechanism" used to reduce stress and also describes this behavior as "a thrill."

As a result of Robinson's convictions and his behavior following his incarceration, the State petitioned to have Robinson civilly committed as a sexually violent predator under Iowa Code chapter 229A.[3] During a three-day jury trial, Robinson acted as a self-represented litigant with stand-by counsel.

The State called Dr. William Schmitt, a licensed psychologist, as an expert witness. Dr. Schmitt has conducted sexually violent persons and predator evaluations for over twenty years.[4] Dr. Schmitt testified about his evaluation of

---

section 713.3, subsection 1, paragraph "d", shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906.

[3] The petition was filed in 2022, about seven years after Robinson began his period of incarceration.

[4] The State also called Robinson as a witness. Robinson did not call any witnesses. Dr. Schmitt's report and Static-99R Scoring sheet, used to determine Robinson's risk to reoffend, were admitted as exhibits.

Robinson, which involved interviewing him, reviewing documents, and utilizing the Static-99R assessment, a standardized testing tool. Dr. Schmitt concluded with a reasonable degree of medical certainty that Robinson had a history of being sexually violent, suffered from an antisocial personality disorder, and had a risk of greater than fifty percent of committing another sexually violent offense if not confined to a secure facility. The jury found Robinson to be a sexually violent predator.

## II.      Standard of Review

A sufficiency-of-the-evidence claim is reviewed for correction of errors at law. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). "If there is substantial evidence upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt, we are bound by the jury's finding." *Id.* "Evidence is not substantial if it raises only suspicion, speculation, or conjecture," but the evidence is to be considered in the light most favorable to the State. *Id.* at 287.

## III.      Sufficiency of the Evidence

Iowa Code section 229A.2(13) defines a sexually violent predator as "a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined to a secure facility." The State must prove each element beyond a reasonable doubt. *See* Iowa Code § 229A.7(5)(a). And we highlight that "[i]t is not the province of the court . . . to weigh the evidence; such matters are for the jury.'" *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted).

Robinson concedes the first statutory element for civil commitment as a sexually violent predator was met, acknowledging his conviction of a sexually violent offense. So, our focus is on the next statutory element—that Robinson suffers from a mental abnormality which makes him likely to engage in predatory acts constituting sexually violent offenses if not confined in a secure facility.

To prove Robinson had a "mental abnormality," the State was required to show: (1) he has "a congenital or acquired condition affecting [his] emotional or volitional capacity"; and (2) his condition "predispos[es him] to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." Iowa Code § 229A.2(6). The statute must be interpreted to require a showing of "'a serious difficulty in controlling behavior' to support civil commitment as a sexually violent predator." *In re Det. of Barnes*, 689 N.W.2d 455, 458 (Iowa 2004).

Robinson focuses on what he considers an important distinction between a "mental disorder" and a "mental abnormality." He argues that because an "abnormality" requires a "serious difficulty controlling behavior," and because, in his opinion, he does not have such a difficulty, he does not suffer from a mental abnormality. His opinion stems from the fact that he has committed only one out-of-custody sexually violent offense. Robinson asserts that, unlike the respondent in *Barnes* with a history of violent offenses, he has no significant history of repeated sexually violent offenses. *See Barnes*, 689 N.W.2d at 456–57. Robinson discounts his history of in-custody sexual offenses. He acknowledges his history only to state it should be given less weight because of the "isolated environment"

where it occurred. But Robinson cites no authority that the sex crimes or sexual misconduct must occur when out of custody.[5]

Dr. Schmitt diagnosed Robinson with antisocial personality disorder.[6] He concluded that individuals suffering from antisocial personality disorder exhibit a "pervasive chronic pattern of disregarding and violating the rights of other people." And Dr. Schmitt addressed Robinson's distinction concerning a "mental disorder" and "mental abnormality." Dr. Schmitt pointed out that for a mental disorder to be a mental abnormality under the legal definition, it had to be a disorder that predisposes Robinson to commit a sexual offense. Dr. Schmitt testified that Robinson's condition fit the definition of a mental abnormality.

Dr. Schmitt detailed Robinson's criminal history, including both sexual and non-sexual offenses. And he testified to the significance of the recent offenses, highlighting that Robinson's actions during his incarceration reflect his difficulty in controlling his behavior. As Dr. Schmitt pointed out, in the month before trial, when the stakes were extraordinarily high, Robinson continued to engage in acts of indecent exposure. In Dr. Schmitt's words:

> It's just clinically relevant for me that he's had such a bad month before his trial. And it speaks to his difficulty controlling this behavior, his struggles in prison. And because he's struggling in prison, I don't have confidence that, if we release him, he's going to do better in the community.

---

[5] Dr. Schmitt noted in his testimony that indecent exposure is considered a sexually violent offense for purposes of the evaluation.

[6] Dr. Schmitt testified in detail relating to the diagnostic criteria for this diagnosis, concluding that Robinson met seven out of seven criteria, although he needed to meet only three of the criteria to qualify for the diagnosis.

Dr. Schmitt addressed Robinson's questioning related to his one out-of-custody sexually violent offense:

> So you have the case in 2014. And then, by your report that because you were—you became then a convicted sex offender and put in prison and had to deal with that—I think you talked about it. It affected your self-esteem, caused a lot of negative emotions for you, that you then starting acting out on those—that situation with more inappropriate sexual behavior.
>
> So while I agree with you that you've got one case out on the streets in the community in 2014, the issue is that how you have responded to that one case has not been to not act—to not act out sexually. It's that your response has been to repeatedly sexually act out in prison in addition to that case in the community.

Dr. Schmitt, addressing Robinson's lack of self-awareness of his risk factors, stated such was a major concern. He also spoke to Robinson's opinion of his risk and treatment:

> He believes he's at no risk. He believes that he doesn't need to do treatment; that he doesn't have things to work on in treatment; and that he could be safe in society because he won't be in the confines of prison where he's having all the trouble now.

Through the Static-99R assessment concerning the risk to reoffend, Dr. Schmitt detailed that Robinson scored in the highest category as likely to reoffend. Dr. Schmitt noted the high number of sexual thoughts Robinson had on any given day and that his disorder caused him to act on sexual urges without consideration for the consequences.

Dr. Schmitt testified there was a greater chance than not that, if released, Robinson would commit another sexually violent offense. The testimony of a doctor that there is a likelihood a respondent will sexually reoffend is sufficient to distinguish that respondent from a typical recidivist. *In re Det. of Altman*, 723 N.W.2d 181, 185–86 (Iowa 2006).

**IV.     Conclusion**

We determine there was substantial evidence for the jury to conclude Robinson is a sexually violent predator, as a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if not confined to a secure facility.  We reject Robinson's challenge and affirm.

**AFFIRMED.**