# IN THE COURT OF APPEALS OF IOWA

No. 18-2118
Filed November 27, 2019

IN RE THE DETENTION OF DEWAYNE BETHKE,

**DEWAYNE BETHKE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Mitchell County, Christopher Foy, Judge.


        The respondent challenges the district court's ruling granting the State's petition to civilly commit him as a sexually violent predator. **AFFIRMED.**


        Jill Eimermann of State Public Defender's Office, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.


        Considered by Potterfield, P.J., and May and Greer, JJ.

**POTTERFIELD, Presiding Judge.**

Dewayne Bethke appeals from the district court ruling granting the State's petition to civilly commit him as a sexually violent predator. Bethke challenges the sufficiency of the evidence supporting the district court's findings he suffers from a mental abnormality, as defined by Iowa Code section 229A.2(5) (2017), which makes it more likely than not he will commit another sexually violent act.

**I. Background Facts and Proceedings.**

Bethke was born in 1966. He dropped out of school after the eighth grade and has engaged in criminal acts since the age of thirteen. He has not maintained stable employment or housing and often relies on family members for financial and housing assistance.

In 1992, when he was approximately twenty-six years old, he broke into a home and stole a photograph and two pairs of underwear of the daughter who lived there. Bethke stole the items with the intention of sexual gratification. He was initially charged with burglary in the third degree but entered a guilty plea to trespass with damage.

In 2001, Bethke pled guilty to one count of lascivious acts with a child and one count of assault in violation of individual rights after sexually molesting two of his nieces, who were approximately ten years old at the time. Bethke's prison sentence was suspended, and he was placed on probation.

Bethke's probation was eventually revoked; he continued to get caught with underwear he stole from various women, including in 2007 when he was found with underwear belonging to one of the nieces he molested and in 2008 when he was kicked out of the residential facility where he lived for stealing

another resident's underwear. Bethke admits he stole the underwear for masturbatory purposes.

In 2014, when Bethke was nearly fifty years old, he was convicted of assault resulting in injury after he pushed a young woman on a bike trail off her bike. At various times since the incident, including during a later polygraph test, Bethke stated he pushed the woman off the bike with the intention of raping her. During the trial on the State's petition to have him civilly committed, Bethke denied having the intent to rape the woman—who he recognized as a friend of one of the nieces he molested—and claimed he and the woman were in an unintentional bike accident.

Also in 2014, Bethke was convicted of burglary in the third degree after he broke into the home of one of the nieces he had molested—now a woman in her twenties—and stole multiple pairs of her underwear. Bethke admits he stole the underwear with the intention of using them for sexual gratification.

In February 2017, while Bethke was still serving his prison sentence for his 2014 conviction of burglary in the third degree, the State filed a petition asserting Bethke is a sexually violent predator who should be committed under chapter 229A of the Iowa Code.

After a hearing, the court determined there was probable cause to find Bethke is a sexually violent predator pursuant to Iowa Code section 229A.2, ordered Bethke to be allowed to serve and discharge his criminal sentence, and ordered the Iowa Department of Corrections to maintain custody of Bethke "at an appropriate secure facility" after his sentence discharged pending final disposition of the proceedings on whether he is a sexually violent predator.

The trial took place in March 2018.[1] When asked what ages his nieces were at the time he molested them, Bethke answered they were twelve or thirteen. When confronted with the fact that the records showed they were nine and eleven, he denied that was possible. Bethke also minimized his actions, stating he touched each niece's "breast area over the top of her clothing" on a single occasion. The description of the action taken and number of times is at odds with the reports made by the nieces and earlier admissions made by Bethke. Additionally, Bethke changed his story about what took place on the bike trail and his intentions when he shoved the woman from her bike. During his 2016 polygraph test, Bethke admitted to sexually abusing three other minors, for which he was never caught or faced legal charges—an eleven-year-old boy and two teenage girls. At trial, Bethke denied having any male victims and maintained his admission had been that he was abused as a young child.

Dr. Kimberly Weitl, a clinical psychologist who testified as an expert witness for the State, testified that she diagnosed Bethke as having pedophilic disorder, fetish disorder, and antisocial personality disorder. When asked about Bethke's denial of being sexually attracted to children, Dr. Weitl noted that the DSM-5 provides that pedophilic disorder "doesn't go away. . . . [T]here's some suggestion that maybe even the intensity of the urges can diminish, um, as time goes by or—and/or with treatment. Um, but it doesn't go away." She also noted

---

[1] By statute, the court "shall conduct a trial to determine whether respondent is a sexually violent predator" "within ninety days after . . . [the] completion of the probable cause hearing held under section 229A.5." Iowa Code § 229A.7(3). However, as occurred here, the respondent can waive the ninety-day trial requirement. In fact, the delay between the probable cause hearing and the trial can be largely attributed to Bethke's requests for continuances, which the district court granted.

that Bethke's fetish regarding women's underwear had led him to break the law repeatedly between 1992 and 2014, breaking into homes and stealing the personal belongings of women to whom he claimed an attraction. His pedophilic and fetish disorder, combined with the antisocial personality disorder—which is "a disregard for and violation of the rights of others" and includes "an inability to control their behavior or manage their behavior"—led her to conclude it was more likely than not Bethke would continue to commit sexually violent offenses if not held in a secure facility.

Dr. Weitl discussed her use of the Static-99R and the Static-2002R, which are risk assessment tools commonly used in the profession to help determine the likelihood a person will commit another sexual offense. Based on Bethke's personal history, Dr. Weitl determined he scored an eight on the Static-99R, which she reported meant he was 7.32 times more likely than the typical offender, which has a score of two, to be caught, charged, or convicted of another sex offense. When asked, Dr. Weitl testified that the instruments also came with recidivism tables, which provide "a percentage of the studied sample group that sexually re-offended." Dr. Weitl did not include those percentages in her report because she believes the numbers confuse the question of whether a person is more likely than not to re-offend. In support of this, she testified the recidivism charts underestimate the risk because their data only includes those who are *caught* reoffending, sexual assaults often go unreported,[2] and the charts only show chance of reoffending within a certain time period—five years or ten

---

[2] According to Dr. Weitl's testimony, the "last time [she] looked" at FBI statistics, "it said 57 percent of" "sexual assaults aren't even reported."

years, depending on the chart. When asked, she testified that, using the "high risk tables" for the Static-99R, the recidivism rate within ten years for someone with a score of eight was 37% to 60%. She also expressed concern that Bethke had been unable to testify about his offense cycle, indicating that it was important for someone with deviant urges to be able to "have a good grasp on [their] pattern of behavior," so they can "know where to intervene and how to intervene."

Dr. Luis Rosell, a forensic psychologist who testified as an expert witness for Bethke, agreed with Dr. Weitl's diagnoses for Bethke: pedophilic, fetish, and antisocial personality disorder. But he maintained the diagnoses did not mean Bethke suffered from a mental abnormality as defined by Iowa law, as he opined Bethke did not have serious difficulty controlling his behavior. In reaching this conclusion, Dr. Rosell noted there was no evidence that Bethke had acted on pedophilic urges after his 2001 convictions for molesting his nieces. Additionally, Dr. Rosell relied heavily on the version of events Bethke told him—testifiying it was "questionable" whether Bethke's assault of the woman on the bike trail was sexually motivated, in spite of the fact Bethke stated during the polygraph that he intended to rape the woman. Dr. Rosell also put emphasis on the fact Bethke had completed sex offender treatment, testifying:

> So in terms of addressing maybe issues of anger and boundaries and how to behave appropriately around other people . . . , any time you go into any treatment program, even if you don't do— you're not doing that well in there; you're not admitting to everything, you can always pick up so many things regarding your life on how you should behave and interact with people in a more appropriate manner.
> And at a minimum those are some of the things I believe he was able to pick up and trying to figure out, trying to understand more about empathy and consider other people, etc, when you

don't have to.

The district court filed a written ruling in November 2018, granting the State's petition to civilly commit Bethke as a sexually violent predator and stating, in part:

> The court found the testimony of [Bethke] at trial to be extremely unbelievable and unreliable. He minimalized the harm to the victims of his crimes. He was unwilling to accept responsibility for his own actions and attempted to shift blame to others for almost every conviction on his record. [Bethke] appears to have very little insight into the disorders that motivate his criminal behavior and even less understanding of what he must do to avoid committing sexually motivated offenses in the future.
> . . . .
> The court gave more weight to the analysis and conclusions made by the expert offered by the State, Kimberly Weitl, Psy.D., than those of [Bethke's] expert, Luis Rosell, Psy.D. In reaching his ultimate conclusion, it appears that Dr. Rosell relied too heavily on what he was told by [Bethke] and assigned too much significance to the sex offender treatment programming done by [Bethke]. Based on its review of the record and its observations of [Bethke] during the trial, the court has no confidence that [he] has internalized and would be able to implement any of the principles or concepts of the sex offender treatment programming he has received. The analysis employed and conclusions reached by Dr. Weitl are consistent with and supported by the evidence in the record beyond a reasonable doubt.

Bethke appeals.

## II. Standard of Review.

We review challenges to the sufficiency of the evidence for correction of errors at law. *In re Det. of Bosworth*, 711 N.W.2d 280, 286 (Iowa 2006). We review all the evidence in the record in the light most favorable to the State. *Id.* In doing so, we do not ignore the evidence not supporting the ruling, but we afford the State "all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record." *Id.* (citation omitted).

### III. Discussion.

Iowa Code section 229A.2(12) defines "sexually violent predator" as "a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." Bethke concedes he has been convicted of a sexually violent offense. But he challenges whether the State established he suffers from a mental abnormality that makes him likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

While Bethke does not challenge his diagnoses of pedophilic, fetish, and antisocial personality disorders, he maintains the State did not prove those disorders cause him serious difficulty in controlling his behavior, as is required for a "mental abnormality." *See* Iowa Code § 229A.2(6) (defining "mental abnormality as "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others."); *see also In re Det. of Barnes*, 658 N.W.2d 98, 101 (Iowa 2003) (requiring a showing of "mental abnormality" to include proof the person has "serious difficulty in controlling their behavior"). In making this claim, Bethke points to the fact that he was not charged with any crimes implicating his pedophilic disorder after 2000 and argues his 2014 crimes of aggravated assault and burglary in the third degree "were not squarely sexually motivated."

As to his first argument, nothing in the sexually-violent-predator statute requires that the offender continue to commit the same type of sexually violent

offenses in order to be confined. Stated another way, while Bethke's original convictions for sexually violent offenses involved children, the court can find Bethke to be a sexually violent predator if he is likely to commit sexually motivated offenses against persons of any age. We agree the record supports that Bethke seems to have better control over his urges involving children,[3] but he has been less successful in stopping himself from acting on other sexually motivated urges.

As to his second argument, Bethke characterizes the evidence regarding his motivation for shoving the woman off her bike and breaking into his niece's home to steal her underwear as "conflicting." But as the district court concluded, Bethke's attempt to minimize his actions or recast his intentions was "extremely unbelievable and unreliable." Bethke admitted to various people at various times, including to the person conducting the polygraph exam that Bethke passed, that he shoved the woman off her bike with the intention of raping her. And he admitted during trial that he broke into his niece's home—though he maintained it was to use her bathroom—and then stole her underwear with the intention of using them for masturbatory purposes. Bethke continued to make impulsive criminal decisions for the purpose of his own sexual gratification. He completed sex offender treatment programming after the two 2014 crimes, but his inability to testify about his offense cycle and his plans for coping with his urges supports the court's conclusion that Bethke has very little "understanding of what he must do to avoid committing sexually motived offenses in the future."

---

[3] We acknowledge, but do not credit, Bethke's testimony that he is no longer attracted to prepubescent children.

Viewing the evidence in the light most favorable to the State, Bethke continues to suffer from a mental abnormality that causes him serious difficulty in controlling his behavior and predisposes him to commit sexually violent offenses.

Next, Bethke challenges the sufficiency of the evidence to support the court's determination he is "likely to engage in predatory acts constituting sexually violent offense." *See* Iowa Code § 229A.2(12). "Likely to engage in predatory acts of sexual violence" means "that the person *more likely than not* will engage in acts of a sexually violent nature." *Id.* § 229A.2(5) (emphasis added). "Sexually violent offense" is broadly defined to include criminal acts that have "been determined beyond a reasonable doubt to have been sexually motivated." *Id.* § 229A.2(11)(g). A crime is "sexually motivated" when one of the reasons the perpetrator commits it is for their sexual gratification. *Id.* § 229A.2(10). In support of this claim, Bethke relies on the various recidivism charts that show a less than 50% recidivism rate. He questions the court's reliance on Dr. Weitl's opinion that he is more likely than not to reoffend when her opinion is based on factors other than those provided for in the actuarial instruments and deviates from the percentages provided by the actuarial charts. But Dr. Weitl gave a number of reasons why she believes the recidivism charts underrepresent the likelihood someone will reoffend, including that it only takes into account when an offender gets caught for the later offense, that sexual offense crimes often go unreported, and the period of time it provides for is limited. Moreover, her opinion of how well Bethke had internalized treatment and the fact that Bethke continued to commit offenses into his late forties—when the DSM-5 provides that reduced criminality can be expected after a person reaches

thirty—informed her opinion that Bethke was more likely than not to commit another sexually violent offense. Insofar as Dr. Weitl explained why she diverged from reported recidivism rates in forming her opinion, and the district court found Dr. Weitl to be more credible than Bethke's expert, substantial evidence supports the court's determination that Bethke is likely to engage in predatory acts constituting sexually violent offense. *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) ("When the case evolves into a battle of the experts, we, as the reviewing court, readily defer to the district court's judgement as it is in a better position to weigh the credibility of the witnesses.").

## IV. Conclusion.

Because substantial evidence supports the district court's determination Bethke is a sexually violent predator, we affirm the district court ruling granting the State's petition to have him civilly committed.

**AFFIRMED.**