In re the DETENTION OF Allen Albert BARNES a/k/a Albert Barnes.

State of Iowa, Appellee,

v.

Allen Albert Barnes, Appellant.

No. 03–1216.

Supreme Court of Iowa.

Nov. 19, 2004.

Mark Smith, First Assistant State Public Defender, and Steven L. Addington, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Denise A. Timmins and Linda J. Hines, Assistant Attorneys General, for appellee.

CADY, Justice.

Appellant Allen Albert Barnes appeals from a district court judgment finding him to be a sexually violent predator subject to civil commitment under Iowa Code chapter 229A (2003). His primary claim on appeal is that civil commitment violates his due process rights under both the federal and state constitutions because he has not been diagnosed with a mental abnormality that is in general directly related to sexual offending. For the reasons that follow, we reject the claim and affirm the district court judgment.

## I. Background Facts and Proceedings

Barnes has a long history of sexual misconduct. When he was thirteen, he sexually molested his nephew. In 1981, while on work release from a conviction for forgery, he committed voyeurism. In 1985, he was convicted of three counts of third-degree sexual abuse. He raped three different women at knifepoint. He was also convicted of one count of assault with intent to commit sexual abuse for attempting to rape a fourth woman. He was imprisoned until 1990. In 1996, he was again convicted of third-degree sexual abuse. He forced his way into a woman's house and raped her. He was imprisoned until 2001. While in prison, Barnes was terminated from the sex offender treatment

program four times for sexual misconduct and for engaging in inappropriate behavior towards female staff.

On February 15, 2001, the State filed a petition to have Barnes civilly committed as a sexually violent predator under Iowa Code chapter 229A. On August 30, 2001, a jury found Barnes to be a sexually violent predator, and the district court ordered him confined in accordance with chapter 229A. Barnes appealed, alleging a jury instruction violated due process. We reversed the commitment and remanded the case for a new trial. *In re Detention of Barnes*, 658 N.W.2d 98 (2003).

On remand, both parties agreed to a bench trial. At trial, the State called Dr. Caton Roberts, a professor of psychology at the University of Wisconsin–Madison, as its expert witness. Dr. Roberts diagnosed Barnes with antisocial personality disorder and testified that he also met the criteria for being a psychopath. He opined Barnes had a mental abnormality that made it difficult for him to control his behavior and made him likely to engage in sexually violent offenses if not confined. Barnes called Dr. Lynn Maskel, a forensic psychiatrist, as his expert witness. Dr. Maskel opined that antisocial personality disorder does not "affect[ ] the emotional or volitional capacity in any kind of significant way" and "does not cause a serious difficulty in controlling behavior." She testified that antisocial personality disorder is common among criminals in general and that forensic psychiatrists do not consider it to predispose a person to commit sexually violent offenses.

The district court concluded Barnes was a sexually violent predator under chapter 229A. It committed him to the Department of Human Services in accordance with section 229A.9.

Barnes appeals and raises two issues. First, he contends a commitment based on a diagnosis of antisocial personality disorder renders the statute overly broad and violates due process. Second, he asserts the evidence was insufficient to support a finding that he had a mental abnormality that caused him serious difficulty controlling his behavior.

## II. Standard of Review

When violation of a constitutional right is claimed, the standard of review is de novo. *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004) (citing *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001)). "The court makes an 'independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001)). "We give considerable deference to the trial court's findings regarding the credibility of the witnesses, but are not bound by them." *Id.* (citing *Turner*, 630 N.W.2d at 606; *State v. Liggins*, 524 N.W.2d 181, 186 (Iowa 1994)). We review a challenge to the sufficiency of evidence for errors at law. *Wolbers v. Finley Hosp.*, 673 N.W.2d 728, 734 (Iowa 2003) (citing *Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002)).

## III. Overview

To establish Barnes was a sexually violent predator, the State was required to prove: (1) he was "convicted of or charged with a sexually violent offense"; and (2) he "suffers from a mental abnormality which makes [him] likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." Iowa Code § 229A.2(11). To prove Barnes had a "mental abnormality," the State was required to show: (1) he has "a congenital or acquired condition affecting [his] emotional or volitional capacity"; and (2) his condition "predispos[es] [him] to commit sexually violent offenses to a degree which would

constitute a menace to the health and safety of others." *Id.* § 229A.2(5).

In *In re Detention of Barnes,* we held that, consistent with the Supreme Court's decisions in *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), and *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), due process requires the State to show a person has "a serious difficulty in controlling behavior" to support civil commitment as a sexually violent predator. 658 N.W.2d at 101. This showing "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane,* 534 U.S. at 413, 122 S.Ct. at 870, 151 L.Ed.2d at 862–63. Additionally, in *Foucha v. Louisiana,* the Supreme Court held, "[d]ue process requires that the nature of commitment bear some reasonable relationship to the purpose for which the individual is committed." 504 U.S. 71, 79, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437, 447 (1992) (citations omitted). Barnes seizes on this language to support his central claim on appeal that an antisocial personality disorder is not a mental abnormality that sufficiently relates to sexual offending to support a commitment.

### IV. Barnes's Commitment as a Sexually Violent Predator

#### A. Mental Abnormality

Barnes disputes that he suffers from a "mental abnormality" as defined under the statute because his mental diagnosis is limited to antisocial personality disorder. He asserts this diagnosis is not correlated with sex-offending and that forty to sixty percent of the prison population has this diagnosis. *See* Paul Moran, *The Epidemiology of Antisocial Personality Disorder,* 34 Soc. Psychiatry & Psychiatric Epi-

demiology 231, 234 (1999) (recognizing that forty to sixty percent of the male prison population is diagnosable with antisocial personality disorder). He further contends, "a diagnosis of antisocial personality disorder does not imply anything about a person's ability to control their behavior and does not indicate whether the person is more or less likely to commit a sex offense." Therefore, he concludes that a civil commitment based solely on this diagnosis violates due process. We consider this argument in the context of the statutory elements of a "mental abnormality."

#### 1. Congenital or Acquired Condition Affecting Emotional or Volitional Capacity

There was expert testimony presented at trial that Barnes suffers from antisocial personality disorder. This testimony also revealed that such a disorder does not necessarily relate to sexual offending. However, the experts disagreed about the effect of the disorder, including the effect of the disorder on a person's emotional or volitional capacity. Dr. Roberts testified that antisocial personality disorder is a condition that is either congenital, acquired, or both. He further testified it affects Barnes's emotional and volitional capacity. Dr. Maskel, on the other hand, testified that antisocial personality disorder does not affect emotional or volitional capacity.

We first reject the notion that antisocial personality disorder cannot serve as the basis for civil commitment under chapter 229A. Our review of section 229A.2(11) reveals that the types of conditions that can serve to establish a "mental abnormality" are not limited to certain recognized diagnoses. Furthermore, due process does not require such limitation. What is important is that the statute requires the condition to be congenital or acquired and to

affect the emotional or volitional capacity of the person subject to commitment. Significantly, the statute does not require that the condition affect the emotional or volitional capacity of every person who is afflicted with the disorder or condition; the requirement is that it has that effect on the particular individual subject to commitment. This limitation satisfies due process and requires the State to present evidence to support it.

The opinions expressed by Dr. Roberts, the State's expert, supported a finding that Barnes had a "condition affecting [his] emotional or volitional capacity." Although the evidence was conflicting, we frequently defer to the district court's judgment in such cases because it was in a better position to weigh the credibility of the witnesses. *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000). Additionally, Barnes testified that he did not set out to commit rape in one of the rape incidents in 1985. Instead, Barnes testified the rape "was just a spur of the moment thing."

He also testified to the effect that at the time, he felt the victims wanted to engage in sexual intercourse with him because they had been nice and smiled at him. He indicated he felt forced to rape them because they did not voluntarily engage in sexual intercourse with him or attempt to run from him. Thus, the first component of the definition of "mental abnormality" was satisfied, and we turn to the second component.

### 2. Predisposition to Commit Sexually Violent Offenses

■■ Barnes claims there is an insufficient nexus between antisocial personality disorder and predisposition to sexually offend. He argues that an antisocial personality disorder ultimately cannot serve to establish a "mental abnormality" under the statute because the DSM–IV definition of the disorder does not include a predisposition to commit sex offenses.[1] Thus, because he has not been diagnosed with a paraphlia, such as pedophilia[2] or exhibi-

---

1. The following are the diagnostic criteria for antisocial personality disorder:
   A. There is a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years, as indicated by three (or more) of the following:
      (1) failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest
      (2) deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure
      (3) impulsivity or failure to plan ahead
      (4) irritability and aggressiveness, as indicated by repeated physical fights or assaults
      (5) reckless disregard for safety of self or others
      (6) consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations
      (7) lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another

   B. The individual is at least age 18 years.
   C. There is evidence of Conduct Disorder with onset before age 15 years.
   D. The occurrence of antisocial behavior is not exclusively during the course of Schizophrenia or a Manic Episode.

   Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § 301.7 (4th ed. 1994).

2. The Supreme Court in *Kansas v. Hendricks*, in which the respondent was diagnosed with pedophilia, held that his "lack of volitional control, coupled with a prediction of future dangerousness, adequately distinguishe[d him] from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." 521 U.S. 346, 360, 117 S.Ct. 2072, 2081, 138 L.Ed.2d 501, 514 (1997). The Court thus concluded that his "diagnosis as a pedophile, which qualifie[d] as a 'mental abnormality' under the [Kansas civil commitment statute], thus plainly suffices for due process purposes." *Id.* Significantly, however, the Court did not hold that due process requires a diagnosis of a

tionism,[3] or any other recognized condition that is in general directly related to sexual offending, Barnes claims he cannot be adjudicated a sexually violent predator under the statute. It is in this context that Barnes asserts that commitment under chapter 229A violates due process.

Consistent with the first component of "mental abnormality," we observe the statute does not require a sexually violent predator to have a condition that causes people *in general* to sexually offend. Rather, it requires an individualized inquiry: whether the mental abnormality makes the *particular individual* likely to commit sexually violent offenses. *See* Iowa Code § 229A.2(5) (requiring a condition that "predispos[es] *that person* to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others"); *id.* § 229A.2(11) (requiring the offender to "suffer[ ] from a mental abnormality which makes *the person* likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility") (emphasis added); *cf. In re Commitment of Adams*, 223 Wis.2d 60, 588 N.W.2d 336, 340 (Ct.App.1998) (stating that the Wisconsin civil commitment statute focuses "on *the* person who is the subject of the petition" and "on the specific link between *that* person's mental disorder and the effect of *that* mental disorder on *that* person"; holding that "a person who has the mental disorder of 'antisocial personality disorder,' uncoupled with any other mental disorder, may be found to be a 'sexually violent person' "). We think this individualized

inquiry comports with the requirements of due process because it ultimately serves to limit civil commitment to dangerous sexual offenders. At the same time, it protects those persons inflicted with antisocial personality disorder who are not predisposed to commit sexual offenses from commitment. Thus, we conclude due process does . not require the person subject to commitment to have an underlying condition or diagnosis that causes people in general to commit sexually violent offenses. Due process is satisfied as long as the condition or disorder predisposes the particular person, under his or her particular circumstances, to commit sexually violent offenses.

The evidence in this case shows how the particularized inquiry satisfies due process. The opinion expressed by Dr. Roberts that Barnes's antisocial personality disorder predisposed him to commit sexual offenses included other evidence such as his psychopathy checklist score, sexually violent history, and treatment history.

## V. Sufficiency of Evidence

Barnes also argues the district court erred in denying his motion for directed verdict, claiming there was insufficient evidence he had serious difficulty controlling his behavior. This is based primarily on his assertion that there were periods of time when there was no evidence that he committed any sexual crimes.

We find ample evidence to support a finding that the antisocial personality dis-

---

condition that generally correlates with sex offending, such as pedophilia.

3. In *Kansas v. Crane,* the respondent was diagnosed with both antisocial personality disorder and exhibitionism. 534 U.S. 407, 411, 122 S.Ct. 867, 869, 151 L.Ed.2d 856, 861 (2002) (citing *In re Crane,* 269 Kan. 578, 7 P.3d 285, 287 (2000); Am. Psychiatric Ass'n,

*Diagnostic and Statistical Manual of Mental Disorders* 569, 701–06 (4th ed., text rev. 2000)). However, as in *Hendricks,* the Court in *Crane* did not limit the scope of mental abnormalities for which due process may allow civil commitment to those generally correlated with sex offending.

order caused Barnes serious difficulty controlling his behavior. Dr. Roberts testified that Barnes had serious difficulty controlling his behavior due to both his antisocial personality disorder and his high score on the psychopathy checklist. He explained, "Psychopaths are on average more impulsive and dysregulated in terms of their behavior cycles, their irritability and violence cycles ... compared to the average antisocial personality disordered individual." Moreover, he testified, "antisocial individuals with sexually violent histories, are the subset of antisocial personality disordered individuals that have specific difficulty in controlling their behavior."

We recognize Dr. Maskel testified that antisocial personality disorder "does not cause a serious difficulty in controlling behavior." In particular, she explained,

> Forensic psychiatrists view antisocial personality disordered individuals as people who make bad choices and are punished in the criminal system. They don't have a mental excuse for what they've done. They—the impact on their ability to control their behavior is not seen as a serious difficulty. If it were, forensic psychiatrists would be endorsing basically a mental excuse for the criminal behavior.

Ultimately, however, the district court found Dr. Roberts' testimony more credible and more responsive to the particular circumstances of the case. Because this issue essentially turned on a judgment of credibility between two experts with different opinions, we give weight to the district court's judgment. *Jacobs*, 607 N.W.2d at 685 ("When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses." (Citation omitted.)). Additionally, the record revealed Barnes admitted to the medi-

cal director of the sexual offender treatment program that he was not ready to be released. We find this evidence, and all the other circumstances presented, amounts to substantial evidence to support the district court's conclusion that Barnes had a serious difficulty controlling his behavior. *See Wolbers*, 673 N.W.2d at 734 (stating that we will affirm the denial of a directed verdict if there is substantial evidence to support each element of the claim) (citing *Heinz*, 653 N.W.2d at 338).

## VI. Conclusion

We find Barnes's civil commitment as a sexually violent predator does not violate due process. We also find there was sufficient evidence he has a serious difficulty controlling his behavior. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**