# IN THE COURT OF APPEALS OF IOWA

No. 21-1305
Filed October 19, 2022

**IN RE DETENTION OF JOSHUA BARR,**

**Joshua Barr,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Allamakee County, Richard D. Stochl, Judge.


        Joshua Barr appeals the district court order adjudicating him a sexually violent predator and civilly committing him to the custody of the department of health and human services.  **AFFIRMED.**



        Chad R. Frese of Kaplan & Frese, LLP, Marshalltown, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.


        Considered by Bower, C.J., Tabor, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BOWER, Chief Judge.**

Joshua Barr appeals his commitment as a sexually violent predator under Iowa Code Chapter 229A (2015). He argues the district court erred by concluding beyond a reasonable doubt that he had a mental abnormality that made him more likely than not to engage in predatory acts of sexual violence. The court's findings are supported by substantial evidence and, thus, we affirm.

**I. Background Facts.**

In 2007, Barr was charged with a sexual offense against a twelve-year-old girl and pleaded guilty to simple assault; he was twenty-six years old. In 2011, Barr was convicted of three sexually violent crimes when he was age twenty-nine. The victims of the three offenses were ages thirteen (indecent contact with a child), fifteen (third-degree sexual abuse), and sixteen (third-degree sexual abuse). With respect to the third-degree-sexual-abuse convictions, Barr was sentenced to concurrent ten-year prison terms and a special sentence of lifetime parole.

On October 14, 2015, the State filed a petition alleging Barr was a sexually violent predator. A hearing was held, and the court found probable cause Barr was a sexually violent predator and set his case for trial.

Trial on the merits was continued several times for good cause, with a bench trial finally held on July 21 and 22, 2021. The State provided testimony from Barr and its expert, Dr. Tracy Thomas. Barr offered testimony from his expert, Dr. Christopher Fisher. The competing experts disagreed whether Barr (1) suffered from a mental abnormality and (2) was "more likely than not" to reoffend in a sexually violent manner if released to the community. The district court found the State had met its burden to prove Barr was a sexually violent

predator and all elements under the statute were met beyond a reasonable doubt. Barr was then committed to the custody of the director of the Iowa Department of Health and Human Services until such time as his mental abnormality no longer existed or he was not a risk to reoffend.

Barr appeals, challenging the sufficiency of the evidence to support either of the court's factual findings.

## II. Standard of Review.

"We review a challenge to the sufficiency of evidence for errors at law." *In re Det. of Barnes*, 689 N.W.2d 455, 457 (Iowa 2004). We will uphold the court's decision if there is substantial evidence "upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt." *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). "To determine whether the evidence was substantial, we consider the entirety of the evidence presented in a 'light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record.'" *In re Det. of Swanson*, 668 N.W.2d 570, 574 (Iowa 2003) (citations omitted).

## III. Analysis.

Our legislature has made this finding: "In contrast to persons appropriate for civil commitment under chapter 229, sexually violent predators generally have antisocial personality features that are unamenable to existing mental illness treatment modalities and that render them likely to engage in sexually violent behavior." Iowa Code § 229A.1 (2015). Thus, the legislature has provided for "a civil commitment procedure for the long-term care and treatment of the sexually violent predator." *Id.*

The procedures regarding sexually violent predators should reflect legitimate public safety concerns, while providing treatment services designed to benefit sexually violent predators who are civilly committed. The procedures should also reflect the need to protect the public, to respect the needs of the victims of sexually violent offenses, and to encourage full, meaningful participation of sexually violent predators in treatment programs.

*Id.*

The statute defines a "sexually violent predator" as "a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." *Id.* § 229A.2(12). A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." *Id.* § 229A.2(6). Barr challenges the court's findings that he has a mental abnormality and a predisposition to commit sexually violent offenses.

*Convicted of sexually violent offense.* There is no dispute Barr has been convicted of three sexually violent offenses. Barr admitted he had been convicted, following guilty pleas, of two counts of third-degree sex abuse and indecent contact with a child based upon acts that occurred in the summer of 2010. *See id.* § 229A.2(11) (defining "[s]exually violent offense").

*Mental abnormality.* To prove Barr had a "mental abnormality," the State was required to show he has "a congenital or acquired condition affecting [his] emotional or volitional capacity."

Barr testified he was forty years old at the time of trial. He committed the three offenses while on probation for operating while intoxicated. He stated he pleaded guilty to these offenses to avoid a possibly much longer sentence if convicted of the original charges. Barr testified he met the victim involved in his conviction of indecent contact on Facebook. When asked what prompted him to reach out to the girl, he stated, "Very risqué photos." He admitted he knew she was thirteen when he talked to her in a sexual manner and groped her. Barr admitted having sexual intercourse with the fifteen- and sixteen-year old girls. He testified, "but [I] didn't rape anyone."

Barr testified that while he was released awaiting trial on the sexual offenses he violated a no-contact order and spoke with one of his victims. He conceded he was also found in the company of a sixteen-year-old in violation of the conditions of his release during this time. According to Dr. Thomas's report, Barr also contacted a preteen and a teenager and offered them "a special drink" outside his apartment. Barr also was charged with driving while barred while on release.

After going to prison, Barr married a woman who had two daughters, ages eight and fifteen. Though he divorced the woman, he maintained telephone contact with her children throughout his incarceration. He acknowledged he had talked to the older daughter sexually "in the past." He was also reprimanded for calling the younger daughter ninety-four times over a year when she was sixteen.

In 2014, while serving his sentences in prison, Barr started his court-ordered sexual offender treatment program but was removed from the program because he refused to admit to some of his sexual conduct with one of the victims.

While in prison, Barr was disciplined for engaging in a fight. He was also twice removed from the "safekeeper" house and returned to the prison facility.[1] During re-direct examination, Barr admitted he had previously been convicted of operating while intoxicated three times in Iowa and once in Minnesota. Barr had successfully completed alcohol treatment after each conviction, but he continued to reoffend. Barr explained he did not take the treatment seriously. He acknowledged he was an alcoholic and would need "some type of guidance" if released.

Dr. Thomas, a forensic psychologist, testified she had evaluated Barr to determine if he met the criteria of a sexually violent predator. In doing so, Dr. Thomas reviewed Barr's criminal history, records related to sexual offenses, his performance while under court supervision, Iowa Department of Corrections records, medical records, and treatment history. Dr. Thomas interviewed Barr in 2016 after the petition for civil commitment was filed and submitted her final report in September. She testified she had received additional information throughout the years but the additional information did not change her ultimate opinion that Barr qualified as a sexually violent predator subject to civil commitment.

Dr. Thomas's report included information contained from a sexual history examination summary taken during sexual offender treatment. There, Barr reported "he basically was always out for himself and sex was just another thing that he used people for."

---

[1] A "[s]afekeeper" is defined by statute as "a person who is confined in an appropriate secure facility pursuant to this chapter but who is not subject to an order of commitment pursuant to this chapter." Iowa Code § 229A.2(9).

Offender went back and forth when it came to identifying victims. He states he didn't victimize any of his adult female sexual contacts and then backtracks. Finally, Barr says he didn't care about any of them and it was all about sex. He states he treated all of them like meat. [Barr] reports that he was that way with the minor females and the adult females. He finally admits that he did victimize all of these females in one way or another. It gave him great discomfort to admit this. Note that offender had eleven minor female sexual contacts that were minors when he was an adult. They were [thirteen to sixteen] when he was [eighteen to twenty-nine].

In her interview with Barr, he stated he "would take any opportunity to have sex." When asked about his sexual behavior with teenagers, Barr responded:

many of the girls his own age had children and "weren't taking care of themselves" (i.e., their bodies). He stated he "wanted someone who wasn't a whore . . . who hadn't slept with every guy in town and didn't have kids with a bunch of guys," which led him to teenage girls. He further described how there were no girls his age "without baggage" or who were "decent." He added that he "liked girls that would dress slutty or skanky and provocative" but that "girls [his] age would dress more conservative."

Dr. Thomas concluded that Barr met almost all characteristics of anti-social personality disorder but she could not diagnose him with this condition because there was no record of him having conduct issues as a young teenager.[2]

Dr. Thomas testified at trial that she diagnosed Barr as having "other specified

---

[2] Dr Thomas explained that at the time of her interview with Barr that he did not report conduct problems as an early teen. Dr. Fisher testified Barr reported he started to have behavioral problems his last couple years of high school, but to diagnose antisocial personality disorder, "we have to have evidence of the conduct disorder prior to age fifteen."

Nor did Dr. Thomas diagnose Barr under the "other specified paraphilic" context for "a couple of different reasons":

His behavior has ranged from pubescent, which would be individuals just starting to go through puberty, to pubescent [sic]. And so I suppose I could have said other specified paraphilic disorder, but instead I just—I just indicated that his predominant issues were antisocial behaviors and thinking patterns with sexual attraction to young adolescents. But, again, I suppose I could have diagnosed it that way.

personality disorder," which she determined was a congenital or acquired condition that predisposed him to commit sexually violent offenses.

Dr. Thomas testified

The key here for me was that there was the antisocial personality [traits] plus this sexual attraction to pubescent young teens, and that when you've got that—that pattern of attraction plus the callousness towards victims, the unwillingness to kind of acknowledge that it's harmful for a [twenty-nine]-year-old man to have sex with a—or sexual contact with a thirteen, fourteen-year-old, the willingness to break rules, the willingness to violate the rights of others, when you combine those two things, that's what makes it a mental abnormality. That's what predisposes the individual to commit future acts of sexual violence.

Q. Okay. So it is case-specific based on Mr. Barr's history? A. Correct.

Q. Okay. Because antisocial personality disorder is fairly common in people who are in the prison system; is that fair to say? A. Absolutely.

Q. Okay. And you said you have had even offenders who meet that diagnosis and who have sex offenses that you have said, no, it's not a mental abnormality? A. Yes.

Q. Okay. So in Mr. Barr's case then, does this diagnosis cause him serious difficulty in controlling his behavior? A. I believe so, yes.

Q. Okay. And so all that put together qualifies this then as a mental abnormality? A. That's my opinion, yes.

Q. Okay. And you hold that to a reasonable degree of professional certainty? A. I do.

Dr. Fisher concluded Barr did not have a mental abnormality because there is no support in the medical community for such a diagnosis based on Barr's ongoing antisocial personality traits and his sexual preference for teenage girls.

He testified the Diagnostic and Statistical Manual (DSM-5)[3] does not recognize attraction to pubescent girls as a mental disorder.[4] Dr. Fisher's report notes:

> [Dr. Thomas] has suggested that Mr. Barr has a "sexual preference for teenage girls" without any objective evidence of such a preference. The other evaluator is using nothing but her clinical judgment to substantiate her opinion, which is a tactic that has been sharply criticized in our field. Further, such diagnostic language is in direct contradiction with the classification parameters in the DSM-5. This type of sexual attraction to pubescent or post-pubescent adolescents has been the subject of great debate in the literature as to whether it comprises a mental disorder or not. With the release of the DSM-5 and the official rejection of hebephilia as a recognized mental disorder, the issue was settled; sexual attraction to adolescents is not defined as sexually deviant by any authoritative source. Acting on such attraction by engaging in sexual behavior with minors is obviously illegal, is ill-advised for many clinical, developmental, and societal reasons, and is routinely handled through the criminal justice system in the form of lengthy prison sentences for men who engage in sexual activity with minors.

Dr. Fisher also opined there is no evidence Barr "preferred" teenage girls as sexual partners, noting

> Barr's underage partners were a small fraction of his overall sexual partner pool. He was attracted to these girls because he was less likely to be rejected by them, because they did not have the same "baggage" that he perceived women his age as having, and because they were more receptive to his advances.

On appeal, Barr contends, "While the statute does not specifically come out and say a diagnosis is necessary, by implication one is required by necessity." Our supreme court has flatly rejected any necessity for a specific diagnosis. "This

---

[3] Per Dr. Thomas, "The DSM-5 is basically the manual that's used predominantly in the United States that outlines the criteria for the mental disorders that psychologists typically diagnose."

[4] Pedophilic disorder—recognized by the DMS-5—relates to sexual interest and behavior with prepubescent children. Hebephilia relates to sexual attraction to younger adolescents. There is a "controversy in the field" whether hebephilia is a valid diagnosis, and it is not currently recognized by the DSM-5 as a personality disorder.

[statutory] definition places no limitation on the nature of the condition that may qualify as a 'mental abnormality.'" *Det. of Betsworth*, 711 N.W.2d at 284; *Det. of Barnes*, 689 N.W.2d at 458–59 (holding "the types of conditions that can serve to establish a 'mental abnormality' are not limited to certain recognized diagnoses").

The district court found beyond a reasonable doubt that Barr has "serious mental and emotional issues that have been in place for many years," and his "condition . . . affects his emotional capacity and causes him serious difficulty in controlling his behavior." The court found further,

> Barr has shown a history of a lack of impulse control and an inability to follow rules. Even while in prison, knowing he is facing these proceedings, he has continued to communicate with younger women about shopping for risqué clothing at a boutique and that he continues with his attraction to teenage girls.

Barr takes issue with the trial court's findings, noting he testified he is no longer attracted to teenagers. The district court as factfinder was in the best position to assess his credibility. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (noting the factfinder "is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive").

Viewing the evidence in a "light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record," we conclude there is substantial evidence in the record to support the court's finding that Barr has a mental abnormality. *See Det. of Betsworth*, 711 N.W.2d at 287 (citation omitted).

*Likely to engage in predatory acts.* An individual, if presently confined, is "[l]ikely to engage in predatory acts" if "the person more likely than not will engage

in acts of a sexually violent manner." Iowa Code § 229A.2(5). "Predatory" means acts "directed toward a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.* § 229A.2(7). And a "sexually violent offense" is further defined in section 229A.2(11).

Dr. Thomas evaluated Barr for his risk to reoffend using the Static-99R, an empirically-derived measure of risk of sexual recidivism based on commonly available demographic and criminal history information. The Static 99R assesses ten factors, which are added together to create a total score. It is a recognized assessment tool and has moderate accuracy in ranking offenders according to their relative risk to reoffend.

Dr. Thomas had assessed Bar with a Static-99 score of 5 in 2016, which translates to a "moderate-high" risk category. She recalculated the score to a 4 at the time of trial based solely on Barr's age. Dr. Thomas testified that Barr's current ten-year risk of sexually reoffending is 27.3%.[5] Dr. Thomas opined the risk of recidivism is likely an underestimation because it is based only on those offenders who are caught, and sexually offenses are historically underreported.

Dr. Fisher testified Barr's Static-99R score was a 3, with an associated recidivism rate of 7.9%. Dr. Fisher opined it was more likely than not that Barr would *not* reoffend. His report concludes:

> Mr. Barr's historical guilty pleas were appropriately handled through the criminal justice system. He has used language and expressed ideas that are troubling to anyone who believes women have value as more than just sexual objects. But at this point in time, there are legitimate questions about whether he has ever committed a sexually violent offense or not. Even if we ignore the evidence to the contrary

---

[5] In other words, of the sexual offenders who were part of the pool assessed, 27.3% were found to have reoffended within that time frame.

and fully believe that he committed the prior sexual offenses as initially alleged, empirically substantiated evidence that he has a mental disorder that causes him to be likely to engage in predatory acts of sexual violence if released at this point in his life is sorely lacking.

It appears to be Barr's contention that any risk assessment less than a fifty-percent chance of recidivism falls short of a "more likely than not" standard. Yet, the Static-99R is a risk assessment tool only. It is the factfinder's duty to determine whether an accused is more likely than not will engage in acts of a sexually violent manner.

Here, the district court considered Barr's prior conduct, his history of lack of impulse control, and inability to be compliant with rules of probation. The court noted:

> While being investigated for the sexual assaults, Barr was found in the company of a [sixteen] year old girl despite being prohibited from having contact with minor females as part of his probation for the OWI convictions. After being charged with sexual offenses, Barr attempted to persuade a [twelve] year old and [fifteen] year old girl to drink a "special drink" outside his apartment. On another occasion he made contact with one of his victims after he was charged in violation of a no contact order.

The court also noted:

> Barr participated in sex offender treatment while he was imprisoned in Mt. Pleasant. He was removed from the program in 2014 because of inappropriate comments and for being "very argumentative" and always needing to be right. He also failed to take responsibility for his actions and now takes the [position] that he was not guilty of his offenses and took a bad plea deal.

The court concluded it was more likely than not Barr will engage in acts of a sexually violent manner if not confined.

The district court considered both expert opinions and obviously found Dr. Thomas more convincing. A district court is in the best position to weigh the

credibility of witnesses, and while we are not bound by its credibility determinations, we give them considerable deference. *Det. of Barnes*, 689 N.W.2d at 457. Dr. Thomas's opinion that Barr met the definition of a sexually violent predator was based on her clinical impressions of Barr, Barr's offending history, and statistical models used to predict recidivism. *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) ("When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses." (citation omitted)). Barr's testimony, his offending history, and Dr. Thomas's expert opinion provided substantial evidence upon which a rational trier of fact could find beyond a reasonable doubt Barr is a sexually violent predator.

We thus affirm the order of the district court adjudicating Barr a sexually violent predator and committing him to the custody of the Iowa Department of Health and Human Services.

**AFFIRMED.**