**IN THE COURT OF APPEALS OF IOWA**

No. 22-0885
Filed April 26, 2023

**IN RE THE DETENTION OF DAMION ARMOND RUTUES,**

**DAMION ARMOND RUTUES,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

Damion Rutues appeals a district court determination that he was a sexually violent predator.  **AFFIRMED.**

Michael H. Adams of the Special Defense Unit, Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**VAITHESWARAN, Presiding Judge.**

Damion Rutues appeals a district court determination that he was a sexually violent predator. He contends the record lacks sufficient evidence to support the determination.

Iowa Code section 229A.2(13) (2022) defines a sexually violent predator as follows: "[A] person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." The determination of whether a person is a sexually violent predator must be established beyond a reasonable doubt. Iowa Code § 229A.7(5)(a). Our review of the determination is for substantial evidence. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006).

Rutues' conviction of a sexually violent offense is undisputed. In 2005, Rutues was convicted of three counts of lascivious acts with three girls, ages twelve, eleven, and eight; and in 2015, he was convicted of third-degree sexual abuse of a fifteen-year-old girl. These crimes are statutorily defined as sexually violent offenses. *See* Iowa Code §§ 229A.2(12)(a) (defining a sexually violent offense as "[a] violation of any provision of chapter 709"), 709.8 (defining lascivious acts with a child), 709.4 (defining sexual abuse in the third degree).

We turn to the court's finding of a mental abnormality. A mental abnormality means "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." *Id.* § 229A.2(6).

The State's expert diagnosed Rutues with "pedophilic disorder, sexually attracted to females, non-exclusive type." "Non-exclusive type" referenced his attraction "to children and adults." The expert opined "that Mr. Rutues present[ed] with one statutorily defined mental abnormality." He further opined the disorder "create[d] an impairment in volitional control that increase[d] his risk for acting out sexually in the future." The expert confirmed his reported opinion at trial. While he agreed Rutues' abuse of the fifteen-year-old girl did "not fit into the diagnosis of pedophilic disorder," he noted that it was "still . . . a predisposing mental disorder" as reflected by the fact that, "[w]hen [Rutues] had an opportunity with a 15-year-old, he still acted on that."

Rutues' expert "agree[d] that Mr. Rutues [met] the criteria for pedophilic disorder, attracted to females, nonexclusive type," but he stated Rutues' "most recent offense did not involve a prepubescent child." He further noted that Rutues "completed the sex offender treatment program" and there was research demonstrating "treatment can decrease recidivism." He opined Rutues did not have a mental abnormality. He confirmed his opinion at trial, stating, "I don't believe it's manifesting itself currently."

The district court accepted the opinion of the State's expert over that of Rutues' expert. The court found the State's expert's opinion "more consistent with Mr. Rutues's actual conduct while in the community following his first incarceration for a sexually violent offense." Assignment of credibility was in the district court's purview. *See In re Det. of Barnes*, 689 N.W.2d 455, 461 (Iowa 2004) ("Because this issue essentially turned on a judgment of credibility between two experts with different opinions, we give weight to the district court's judgment.").

We are left with the requirement that the mental abnormality "makes the person likely to engage in predatory acts constituting sexually violent offenses." Iowa Code § 229A.2(13).  A person is "likely to engage in predatory acts of sexual violence" if "the person more likely than not will engage in acts of a sexually violent nature."  *Id.* § 229A.2(5).

The State's expert reported "there is probable cause to believe that the recidivism estimate associated with [Rutues'] score is likely to meet the statutory threshold of 'more likely than not.'"  He testified that he performed a static risk assessment test—the Static-99R—and Rutues' score fell in the "well above average" range.  He also performed a dynamic risk assessment test—the VRS-SO—and Rutues' score placed him in "the high-risk/high-need" category.

Rutues' expert concluded otherwise, citing "several protective factors" such as Rutues' completion of sex offender treatment and the absence of evidence "he sought prepubescent children" following his release from prison.  But he conceded Rutues "score[d] in the well above average range for sexual recidivism," which was the highest risk range on the instrument.  Again, it was the district court's prerogative to side with the State's expert.

Substantial evidence supports the district court's determination that Rutues was a sexually violent offender.  Accordingly, we affirm the court's civil commitment order.

**AFFIRMED.**