# IN THE COURT OF APPEALS OF IOWA

No. 23-1474
Filed November 13, 2024

IN RE DETENTION OF DAVID ANTHONY YINGLING,

**DAVID ANTHONY YINGLING,**
Respondent-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, Judge.

Respondent appeals his civil commitment as a sexually violent predator.
**AFFIRMED.**

Trevor J. Andersen, Assistant Public Defender, Des Moines, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

David Yingling appeals his civil commitment as a sexually violent predator under Iowa Code chapter 229A (Supp. 2023). Yingling challenges the sufficiency of the evidence produced by the State to show he "suffers from a mental abnormality" making him "likely to engage in predatory acts constituting sexually violent offenses if he is not confined to a secure facility." We determine sufficient evidence supports the civil commitment and affirm.

## I.    Background Facts and Proceedings

In 2011, Yingling was convicted of two counts of lascivious acts with a minor which occurred in 2004. These offenses involved Yingling's then girlfriend's nine-year-old daughter. Yingling was incarcerated until 2020. During his incarceration, Yingling completed sex offender treatment. He was diagnosed with pedophilic disorder.

Less than a year after his release, he was arrested and subsequently pled guilty to indecent exposure after he exposed his genitals in a convenience store.[1] Yingling was sentenced to 300 days in jail, to be served concurrent with two years for a special sentence revocation, first offense. Yingling was ordered to complete sex offender treatment again. He began treatment but was suspended based on lack of participation. Yingling was later permitted to resume participation and achieved "maximum benefits." But given his minimal participation and lack of accountability, he was to re-enroll in treatment if not civilly committed.

---

[1] Yingling denied the legitimacy of this conviction. He stated that he only pled guilty to complete the required treatment program.

Yingling was scheduled to discharge his sentence in February 2023. As a result of Yingling's convictions and his predisposition to commit sexually violent offenses, the State petitioned to have Yingling civilly committed as a sexually violent predator under Iowa Code chapter 229A. Trial took place in July 2023. The district court heard testimony from Yingling, the State's expert, Dr. David Thornton, and Yingling's expert, Dr. Luis Rosell. Both psychologists agreed that Yingling fit the diagnostic criteria for pedophilic disorder. But they disagreed on whether there was a greater chance than not that Yingling would commit another sexually violent offense if released. The district court determined that Yingling met the criteria of a sexually violent predator under Iowa Code section 229A.2. Yingling appeals.

## II. Standard of Review

We review challenges to the sufficiency of the evidence for corrections of errors at law. *In re Det. of Barnes*, 689 N.W.2d 455, 457 (Iowa 2004). We will uphold the court's decision if substantial evidence exists "upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt." *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). "To determine whether the evidence was substantial, we consider the entirety of the evidence presented in a light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the record." *In re Det. of Swanson*, 668 N.W.2d 570, 574 (Iowa 2003) (cleaned up).

## III. Analysis

Iowa Code section 229A.2(15) defines a "sexually violent predator" as "a person who has been convicted of or charged with a sexually violent offense and

who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." The State must prove each element beyond a reasonable doubt. *See* Iowa Code § 229A.7(5)(a).

Yingling concedes he has been convicted of a sexually violent offense. But he argues the State did not establish that he suffers from a mental abnormality. A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." *Id.* § 229A.2(8). Yingling argues Dr. Thornton's diagnosis of compulsive sexual behavior disorder should be disregarded as it is not contained in the diagnostic and statistical manual of mental disorders (DSM-5) approved by the American Psychiatric Association. Yingling highlights Dr. Rosell's testimony that he was "not familiar" with a case in which compulsive sexual behavior disorder was alleged to be a mental abnormality.

But Dr. Thornton also diagnosed Yingling with pedophilic disorder, which "predisposes him to acts of sexual violence to a degree which would constitute a menace to the health and safety of others." Indeed, in the conclusion portion of his report, Dr. Thornton relied on the diagnosis of pedophilic disorder, not another diagnosis. "This diagnosis alone was enough to satisfy the qualification of a mental abnormality." *In re Det. of Howard*, No. 22-0855, 2023 WL 4755541, at *2 (Iowa Ct. App. July 26, 2023) (finding diagnosis of pedophilic disorder "constituted more than enough evidence to fit this definition of a mental abnormality"); *accord In re Det. of Darling*, 712 N.W.2d 98, 100 (Iowa 2006) (collecting cases and ruling,

"Darling's mental abnormality—pedophilia—is a proper foundation for his commitment under chapter 229A"). We also observe Dr. Thornton opined Yingling's form of pedophilic disorder is "nonexclusive, which means that he's also attracted to adults." Dr. Thornton testified Yingling's sexual urges "went on long enough that I still see this disorder as applicable to him." *See In re Det. of Pierce*, 748 N.W.2d 509, 512–13 (Iowa 2008) (noting mental abnormality is inextricably linked to recidivism, as the condition must make it more likely than not that the individual will engage in sexually violent acts in future).

And we further highlight that this court has previously rejected Yingling's argument that his diagnosis could not be the basis for a mental abnormality as such was not contained in the DSM-5. *See In re Det. of Barr*, No. 21-1305, 2022 WL 10861330, at *4–5 (Iowa Ct. App. Oct. 19, 2022) (citing *Betsworth* and *Barnes* as the basis for rejecting this argument); *see also In re Det. of Roe*, No. 12-1367, 2013 WL 5229760, at *2–3 (Iowa Ct. App. Sept. 18, 2013) (affirming based on a diagnosis not in the DSM).

Yingling also claims the State did not sufficiently establish that he was more likely than not to reoffend with a sexually violent offense. He relies on Dr. Rosell's opinion that although Yingling scored overall in the "above average range for sexual recidivism," Yingling had "processed his offending history and addressed factors that contributed to his past conduct." Dr. Rosell emphasized that Yingling had not reoffended toward children, which was his "most concerning conduct." As Dr. Rosell testified:

> I think he's not more likely than not to re-offend based on the fact that as far as we know he has one hands-on child victim from over two decades ago. So the likelihood that he would engage in another

hands-on offense against a young child, I believe, is very low given he stopped doing that a long time ago.

In contrast, Dr. Thornton observed Yingling had completed sex offender treatment in prison, reoffended, and participated in treatment again in prison but was suspended because he "had difficulty with taking responsibility for the offenses" he committed.[2]  At trial, Yingling downplayed his offenses.  As the court observed:

> Yingling still rationalizes the offenses, even to the point of stating that there was only two instances and then admitting to four.  He was released on his own and committed a criminal act in the indecent exposure to which he is now saying didn't really happen and that he only pled guilty to get the matter over with.

Dr. Thornton opined Yingling had a risk of greater than fifty percent of committing another sexually violent offense if not confined to a secure facility.  Although Yingling had an expected twenty-year sexual risk for detected sexual recidivism of 47%, when "any reasonable allowance for undetected [sexual] offending" was included, Yingling's final risk estimate exceeded 50%.  And the statute requires that we look at lifetime risk of re-offense, not just a twenty-year window.  Dr. Thornton's report specified that four-fifths of recidivism is detected while one-fifth goes undetected as a conservative assumption.  Dr. Thornton's report added that one could easily argue for a much larger gap between observed and detected sexual recidivism, pointing to a study that suggested around half of

---

[2] We observe Yingling completed the required treatment in his initial incarceration. By the time he was released, the statistical instruments would suggest Yingling was at less risk of recidivism because of his age.  Yet he still reoffended despite these rehabilitative factors.  *In re Det. of Willis*, 691 N.W. 726, 729 (Iowa 2005) ("The absence of sexually predatory acts in a setting of secure confinement does not paint the same picture as the absence of such acts in a normal life situation.").

sexual recidivism goes undetected. And Yingling's own testimony suggested other "deviant interests" went undetected, which he described as "off-chance sexual incident[s]."

While Dr. Rosell provided an opinion contradicting Dr. Thornton's, "a different opinion does not necessitate a different outcome." *Howard*, 2023 WL 4755541, at *2. We defer to the district court's determination that Dr. Thornton's testimony was "convincing." *See In re Det. of Stone*, No. 23-0347, 2024 WL 3291495, at *5 (Iowa Ct. App. July 3, 2024) ("Because the court is in a better position to weigh the credibility of the witnesses than we are, we readily defer to the district court's judgment when there is a battle of experts." (cleaned up)); *accord State v. Fetters*, 562 N.W.2d 770, 775 (Iowa Ct. App. 1997) ("When the psychiatric testimony is conflicting, the reviewing court will 'not determine anew the weight to be given trial testimony.'" (citation omitted)).

The district court also had the opportunity to observe Yingling and evaluate his testimony, which it determined was not credible:

> One issue that is hard to dismiss is Mr. Yingling's dishonesty. He told Dr. Thornton that he had had about 400 sexual partners in his life and later claimed the true number was closer to 250 to 300. Mr. Yingling has given different accounts of his sexual orientation. He told a therapist that he had been seeking depictions of homosexual pornography but later said that he made that up. There is credible indication that he only admitted to a therapist of his past sexual crimes so that he could move forward in the program.
>       Mr. Yingling still rationalizes the offenses that he predicated. He described one incident as an accident. He has described his victim as playing along and being flirtatious towards him prior to his crimes.

It is not our role on appeal to parse out the testimonies; instead, the trial court was in the best position to assess credibility. *See Barr*, 2022 WL 10861330,

at *5.  Given our role on appeal, we conclude substantial evidence in the record supports the district court's finding that Yingling was more likely than not to reoffend if released.  We affirm the order of the district court which determined that Yingling was a sexually violent predator under Iowa Code section 229A.

**AFFIRMED.**