**IN THE COURT OF APPEALS OF IOWA**

No. 23-1935
Filed December 18, 2024

**IN RE DETENTION OF ZEBULUN THAXTON McFADDEN**

**ZEBULUN THAXTON McFADDEN,**
     Respondent-Appellant.
_____

     Appeal from the Iowa District Court for Wright County, Blake H. Norman,

Judge.


     Zebulun Thaxton McFadden appeals his civil commitment as a sexually

violent predator.  **AFFIRMED.**


     Jeffrey Wright, State Public Defender, and Trevor J. Andersen, Assistant

Public Defender, Des Moines, for appellant.

     Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee.


     Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**SCHUMACHER, Presiding Judge.**

Zebulun McFadden appeals his civil commitment as a sexually violent predator under Iowa Code chapter 229A (2023). McFadden's sole issue on appeal is a challenge to the sufficiency of the evidence to support the commitment. We determine sufficient evidence supports the district court's order and affirm.

## I.     Background Facts & Proceedings

This appeal concerns McFadden's most recent criminal offenses.[1] In 2016, while out with friends, McFadden became acquainted with D.L. The two had consensual sex at least once shortly after meeting. McFadden later offered to take D.L. home. Rather than do as he had offered, he drove her to his house in a different town, where he proceeded to use methamphetamine. D.L. described McFadden's personality as changing like "Jekyll and Hyde." At some point, McFadden physically assaulted D.L. About an hour later, the two had sex again. But at McFadden's chapter 229A commitment bench trial, D.L. testified she did not consent to the sex after the assault. She said she was afraid for her life the entire time she was at McFadden's house. Eventually, McFadden drove to a nearby gas station, taking D.L. with him. Once inside the gas station and after McFadden returned to the vehicle outside, D.L. "plead[ed] with [the attendant] to call 911" and

---

[1] In 2007, McFadden was convicted of one count of lascivious acts with a child. McFadden was sentenced to five years imprisonment followed by two years of parole. While incarcerated, McFadden entered sex offender treatment programming (SOTP). As recounted by the district court, "Mr. McFadden's criminal history reflects convictions in California for domestic abuse, battery and vandalism in 2002[;] possession of firearm, false imprisonment, domestic abuse in 2005[; and] domestic assault in 2006. He has Iowa convictions for carrying weapons in 2003, domestic abuse [second] offense and unlawful possession of a weapon in 2004." By McFadden's own testimony, his life has featured substance abuse, assaultive behavior, and continual criminality.

tell the police to look for McFadden's vehicle. The police responded to McFadden's residence, where they arrested him.

In 2017, McFadden pled guilty to third-degree kidnapping and being a felon in possession of a firearm. McFadden was sentenced to a ten-year term of imprisonment and a five-year term of imprisonment, respectively, to be served consecutively. McFadden participated in SOTP. After completing the requirements of SOTP, McFadden remained active in the program, first as a tutor and then as an aid to participants who experienced literacy challenges. But McFadden had numerous institutional disciplinary infractions, conceding his temper and propensity to fight was an issue for him.

With McFadden's anticipated discharge date approaching, the State filed a petition in August 2023 to have McFadden confined as a sexually violent predator under Iowa Code chapter 229A.

At McFadden's civil commitment bench trial, both McFadden and the State called their own licensed psychologist with experience and training in performing evaluations for commitment under sexually violent predator laws. The State called Dr. Eric Jensen; McFadden called Dr. Luis Rosell. The experts agreed that McFadden met the criteria for two mental disorders: antisocial personality disorder and stimulant use disorder, in institutional remission. Dr. Jensen concluded, "McFadden does meet criteria as a sexually violent predator." Dr. Rosell disagreed and disputed some of Dr. Jensen's methodologies, which Dr. Rosell claimed made Dr. Jensen's analysis an "outlier."

Although the district court found certain aspects of Dr. Rosell's methodology more persuasive, the district court ultimately found Dr. Jensen's analysis and

conclusions to be "more consistent with and supported by the evidence in the record than those of Dr. Rosell." The district court granted the State's petition and ordered McFadden to be committed under Iowa Code section 229A.7(5)(b). McFadden appeals.

## II.     Standard of Review

A sufficiency-of-the-evidence claim is reviewed for correction of errors at law. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). "If there is substantial evidence upon which a rational trier of fact could find the respondent to be a sexually violent predator beyond a reasonable doubt, we are bound by the [trier of fact]'s finding." *Id.* We view the evidence most favorably to the State, drawing all legitimate inferences and presumptions accordingly; nevertheless, "[e]vidence is not substantial if it raises only suspicion, speculation, or conjecture." *Id.* at 287.

## III.     Analysis

To succeed on a petition to have a person committed pursuant to chapter 229A, the State must prove, "beyond a reasonable doubt, the respondent is a sexually violent predator." Iowa Code § 229A.7(5)(a); *accord In re Det. of Pierce*, 748 N.W.2d 509, 512 (Iowa 2008). A sexually violent predator is "a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." Iowa Code § 229A.2(15). Thus, three elements must be satisfied: (1) a qualifying charge or conviction, (2) the presence of a mental abnormality, and (3) a

nexus between the mental abnormality and a likelihood of committing future sexually violent offenses.  *See Pierce*, 748 N.W.2d at 513.[2]

McFadden concedes the kidnapping conviction for which he was confined at the time of the petition satisfies the charge or conviction requirement.[3]  He disputes the sufficiency of the evidence on the second and third elements.

Section 229A.2(8) defines "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others."  Iowa Code § 229A.2(8).  To prove such a condition exists, the State must show the respondent has "a serious difficulty in controlling behavior."  *In re Det. of Barnes*, 658 N.W.2d 98, 101 (Iowa 2003).

We determine the record contains substantial evidence that supports the finding that McFadden suffers from a congenital or acquired condition, which affects his emotional or volitional capacity, and that McFadden has a serious difficulty in controlling his behavior.  Both experts diagnosed McFadden with antisocial personality disorder and stimulant use disorder—specifically methamphetamine—in institutional remission.  As Dr. Jensen said, antisocial personality disorder "is an entrenched and chronic inability to conform to societal

---

[2] Though we have discussed these elements as only being two elements, *see In re Det. of Robinson*, No. 22-1606, 2023 WL 5949187, at *2 (Iowa Ct. App. Sept. 13, 2023), we choose to employ the three-part description from *Pierce* here to clearly address each of McFadden's challenges on appeal.

[3] The statutory definition of "sexually violent offense" includes kidnapping "if the offense involves sexual abuse, attempted sexual abuse, or intent to commit sexual abuse."  Iowa Code § 229A.2(14)(b)(2).

norms, rules, laws, and behaviors" that lowers a person's "inhibition against . . . impulsive, harmful acts." Dr. Jensen further testified, "amphetamine use disorder" factors into the analysis as a "disinhibitor" that "amplifies" a person's personality.

The statutory requirements must be met by the way the diagnosed conditions specifically "affect the . . . person subject to commitment." *In re Det. of Barnes*, 689 N.W.2d 455, 459 (Iowa 2004). The district court specifically found credible Dr. Jensen's testimony "that these conditions represent impairments to behavioral controls and judgment that facilitate offending by Mr. McFadden" and constitute a mental abnormality as defined by chapter 229A. *Cf. id.* at 458 (deciding antisocial personality disorder can satisfy the mental abnormality requirement for chapter 229A commitment); *accord In re Det. of Hodges*, 689 N.W.2d 467, 470 (Iowa 2004). And Dr. Rosell agreed, during the events underlying the kidnapping conviction, McFadden's use of methamphetamine combined with his antisocial personality disorder led to his demonstrated "disregard for others, [lack of] empathy, irritability, [and] aggressiveness." And, although Dr. Rosell opined McFadden does not suffer from any condition that statutorily qualifies as a mental abnormality, "the district court was free to accept the testimony of [Dr. Jensen] instead." *In re Det. of Swanson*, No. 18-0715, 2019 WL 1940737, at *3 (Iowa Ct. App. May 1, 2019); *see also Barnes*, 689 N.W.2d at 459 (recognizing a reviewing court defers to a district court's judgment when presented with conflicting expert testimony "because it was in a better position to weigh the credibility of the witnesses"). The evidence is therefore sufficient to support finding the second of the three elements needed for a chapter 229A civil commitment has been met.

Having concluded McFadden suffers a mental abnormality, we must determine whether such predisposes him to commit future sexually violent offenses—the other prong of a mental abnormality and the third element necessary to show a person is a sexually violent predator. McFadden's challenge to this issue focuses on Dr. Jensen's manner of using statistical recidivism rates, which McFadden argues resulted in an "unsubstantiated opinion."

Both experts relied on an actuarial analysis in forming their opinion about McFadden's likelihood of committing future sexually violent offenses. Such instruments enable experts to compare a subject's risk with observed recidivism rates over a five-, ten-, and twenty-year period. Dr. Jensen used two instruments: the Static-99R and the STABLE-2007. The Static-99R quantifies a subject's historical information that "correlate[s] to varying degrees with sexual recidivism." That quantification is then used to determine what category of risk a subject qualifies under. The STABLE-2007 is an instrument used to measure the current status of a person's dynamic, or changing, characteristics and assess that person's criminogenic needs.[4] Dr. Rosell relied on the Static-99R alone and criticized the use of dynamic factors in risk assessments.

By both experts' analysis, McFadden presented an above average risk of reoffending "when compared to a representative sampling of sex offenders."[5] Based on his use of the STABLE-2007, Dr. Jensen also determined McFadden

---

[4] Dr. Jensen explained "criminogenic needs" means the amount of resources needed from the criminal justice, mental health, and sex offender communities to prevent recidivism, as shown by sex offender research.

[5] Although Dr. Jensen scored McFadden at a five on the Static-99R and Dr. Rosell scored McFadden at a four, the experts agree both scores are categorized as above average risk.

has a high criminogenic need. According to Dr. Rosell, the calculated observed recidivism rates for persons with high risk and high needs are 16% at five years and 26% at ten years. Stated differently, according to Dr. Jensen's characterization of the statistic, on average, sixteen of one hundred sex offenders "were noted to be arrested or otherwise brought to legal attention of authorities for committing a new sexual offense" after five years, and after ten years, twenty-six of one hundred sex offenders "were detected of committing a new sex offense." To compare, Dr. Rosell testified that if looking at the observed recidivism rates under the Static-99R only, without factoring in the high-needs determination based on the dynamic risk assessment, the recidivism rates drop to 9% at five years and 13% at ten years—making the combined observed rate (high risk, high needs) roughly double the un-factored Static-99R rate. And though neither expert testified what the combined observed rate is at twenty years, McFadden agreed with Dr. Jensen that in looking only at the un-factored Static-99R rate, the observed recidivism rate is 37.2%.

At any rate, Iowa's sexually violent predator commitment statute does not require a particular risk statistic for satisfaction of the mental abnormality requirement; the statute requires an individualized inquiry. *Barnes*, 689 N.W.2d at 460; *see, e.g.*, *In re Det. of Altman*, 723 N.W.2d 181, 185 (Iowa 2006) (affirming the jury's commitment of Altman without any discussion of recidivism risk statistics); *In re Det. of Stenzel*, 827 N.W.2d 690, 703 (Iowa 2013) (finding substantial evidence to support commitment despite conceded faults with the expert's actuarial test's general reliability and "only one of the tests show[ing] more than a fifty percent likelihood of [the respondent's] reoffending").

Applying the standard of review to which we are bound, substantial evidence supports the district court's verdict. *See Betsworth*, 711 N.W.2d at 286–87. We begin by noting that the district court found Dr. Jensen's testimony "more consistent with and supported by the evidence in the record than . . . Dr. Rosell['s]." *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) ("When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses.").

Dr. Jensen explained the risk estimates are founded on rates of reported offenses but fail to consider the rates of unknown, unreported offenses. So, "these instruments—the Static, in particular—tend[] to underreport sexual recidivism." Dr. Jensen further explained that using the dynamic factors in combination with the Static-99R gives a better understanding of a specific individual's actual risk and that when a subject's risk scores are high in both actuarial instruments, "especially after the . . . completion of treatment," the subject presents a higher risk of committing sexually violent offenses in the future. Accordingly, Dr. Jensen opined McFadden is more likely than not to be within the group of offenders who recidivate as opposed to the group that does not. *See In re Det. of Meyers*, No. 07-0024, 2008 WL 2042608, at *2 (Iowa Ct. App. May 14, 2008) ("Our supreme court has held that chapter 229A does not impose a burden upon the State to prove an alleged sexual predator is expected to reoffend within a specific time period." (citing *Pierce*, 748 N.W.2d at 513)).

As if to underscore Dr. Jensen's "concerns" with high-scoring individuals who have completed sex offender treatment, the evidence shows McFadden lacks

a firm understanding of "consent," despite participating in SOTP twice and assisting other participants with the program. McFadden maintains D.L. consented to the sex after he assaulted her, arguing she never told him no or expressed an unwillingness to engage in sexual activity. He finds no issue in that the sex occurred after he kidnapped her and only an hour after he physically assaulted her. Similarly, McFadden lacks an understanding of the capacity to consent. When asked whether he has ever been sexually abused, McFadden failed to acknowledge he was victimized as a minor by adult women who had sexual encounters with him. McFadden responded, "No, sir. I mean, in [SOTP], being with older women, like, they—they explained to me that that's what it was. But at the time, like, I tried to explain to them that I didn't feel like that's what it was."

Tying the above considerations together with McFadden's history of offending, the district court summarized:

> The importance of this cannot be overstated. Mr. McFadden has demonstrated that he will commit assaultive behavior once released. As previously noted, Mr. McFadden has been incarcerated or in a jail facility for the vast majority of his adult life. Every time he has been released, he has committed a violent assault against a person, whether that is a stranger or a romantic partner, within a short period of time from being released. The majority of past offenses are against women, the gender of his sexual assaults. Further, his incarceration history shows this continued pattern of assaults and defiant behavior. Being firmly convinced a future assault will occur, this leads the court to be firmly convinced that a sexual assault will occur during that event.[6]

---

[6] Any sexual abuse in violation of Iowa Code chapter 709 qualifies as a sexually violent offense under chapter 229A. Iowa Code § 229A.2(14)(a). Included in the definition of sexual abuse is "[a]ny sex act between persons . . . when the act is performed . . . by force or against the will of the other." *Id.* § 709.1(1). In other words, if McFadden were to engage in a sex act with another person without their consent—a concept the evidence shows McFadden fails to recognize—such act would be a sexually violent offense as that term is used in the definition of a sexually violent predator.

This assessment is supported by Dr. Jensen's observations and conclusions. The diagnosis made by Dr. Jensen constitutes a mental abnormality as defined by Iowa Code [s]ection 229A.2(6). His mental abnormality predisposes Mr. McFadden to commit sexually violent offenses to a degree constituting a menace to the health and safety of others. Finding little evidence of improved behavioral or impulse control while in prison[,] Dr. Jensen notes that Mr. McFadden continually takes "full responsibility" before preceding to take less than full responsibility. His unresolved substance abuse, that multiple past treatments have not resolved, increases the likelihood of recidivism. This lead[s] to Dr. Jensen's ultimate conclusion that Mr. McFadden does meet the criteria for [a] sexually violent predator.

We conclude Dr. Jensen's testimony "distinguish[es McFadden] from the typical criminal recidivist" and, viewed together with all evidence presented, provides "substantial evidence to support the [district court's] finding that [McFadden] was a sexually violent predator." *See Altman*, 723 N.W.2d at 186.

## IV. Conclusion

Substantial evidence supports the district court's conclusion that McFadden is a sexually violent predator. We affirm.

**AFFIRMED.**